957 A.2d 1000

John FRENCH

v.

Mary Ann HINES, et vir.

No. 970 Sept. Term, 2006.

Court of Special Appeals of Maryland.

Oct. 3, 2008.

202

Karen J. Kruger (Sean P. Carven, Robert S. McCord, County Atty., on the brief), Bel Air, MD, for Appellant.

Michael P. Tanczyn, Towson, MD, for Appellee.

Panel: HOLLANDER, JAMES R. EYLER and WOODWARD, JJ.

HOLLANDER, Judge.

This matter, which is before us for the second time, arises from a suit filed by Mary Ann Hines and her husband, Leon Hines, appellees (collectively, "the Hines"), against John French, appellant, a former Harford County Sheriff's Deputy.[1]

---

1. Although Mr. Hines was a plaintiff only as to the consortium count, we shall sometimes refer to appellees collectively. The Hines sued

They alleged various common law and constitutional torts stemming from appellant's roadside arrest of Ms. Hines. *See Hines v. French,* 157 Md.App. 536, 852 A.2d 1047 (2004) ("*Hines I*"). In December of 2006, a jury in the Circuit Court for Harford County found appellant liable for use of excessive force in his arrest of Hines, in violation of the Fourth Amendment to the United States Constitution. It awarded Ms. Hines a total of $50,000 in compensatory damages and $10,000 in punitive damages, and awarded Mr. Hines $5,000 for loss of consortium. The trial court subsequently denied appellant's motion for judgment notwithstanding the verdict ("JNOV").

Appellant presents two questions, which we quote:

1. Did the circuit court commit error when it refused to set aside a verdict that held a law enforcement officer liable for a violation of the fourth amendment for using force during a lawful arrest where (a) the plaintiff suffered only minor, trivial injuries and (b) the officer's use of force was privileged under State law?

2. When a jury returns a verdict specifying that a law enforcement officer acted without malice, must a circuit court set aside a companion verdict that required the officer to pay punitive damages.

For the reasons that follow, we shall affirm.

### FACTUAL AND PROCEDURAL SUMMARY

■ On August 29, 1998, appellant stopped Ms. Hines's truck along the side of Route 40 in Harford County on suspicion that she was involved in a hit-and-run accident in Baltimore County, and subsequently arrested her. As it turned out, the dispatch that led to the stop incorrectly identified Ms. Hines's vehicle. As we recounted in *Hines I*,[2]

---

other defendants, but they were dismissed from the suit in rulings we upheld in *Hines I*.

**2.** *Hines I* involved pre-trial rulings. Therefore, given the posture of the case, we set forth the conflicting versions of events. On review of a court's denial of a motion for JNOV, however, we assume the truth of

157 Md.App. at 547–48, 852 A.2d 1047, after Ms. Hines was arrested, she

> was transported to the Harford County Sheriff's Department where she was issued three citations, charging her with failure to drive in designated lane, eluding police, and negligent driving. She was released later that evening, after it was determined that she was not involved in a hit-and-run accident.

\* \* \*

On December 14, 1998, proceedings were conducted in the District Court of Maryland for Harford County regarding appellant's three traffic citations. Pursuant to an agreement between [Ms. Hines] and the prosecutor, the charge of eluding police was placed on the stet docket, a *nolle prosequi* was entered on the negligent driving charge, and a not guilty agreed statement of facts was presented on the charge of failure to drive in designated lane. Based on the not guilty agreed statement of facts, the district court found [Ms. Hines] guilty of failure to drive in designated lane.

On August 21, 2001, appellees filed an eight-count complaint against appellant and several other governmental defendants, including the State of Maryland, the Sheriff of Harford County, and other law enforcement officers, alleging assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, negligence, and loss of consortium arising out of the events of the traffic stop. After the circuit court dismissed and/or granted summary judgment in favor of all defendants, Mr. and Ms. Hines lodged an appeal to this Court.

In *Hines I*, 157 Md.App. 536, 852 A.2d 1047, we affirmed in part, but reversed as to the dismissal of certain counts against

---

all credible evidence, and any inferences therefrom, in the light most favorable to the non-moving party, and resolve all conflicts in the evidence in favor of the prevailing party. *Wholey v. Sears Roebuck and Co.*, 370 Md. 38, 46, 803 A.2d 482 (2002); *Kleban v. Eghrari–Sabet*, 174 Md.App. 60, 85–86, 920 A.2d 606 (2007). Accordingly, our account of the underlying incident is drawn substantially from Ms. Hines's testimony at trial.

French. Of import here, we reversed on the issues of malicious prosecution, negligence, and loss of consortium, holding that because the complaint sufficiently alleged that French had acted with malice, he was not necessarily shielded from liability under the grant of qualified immunity embodied in the Maryland Tort Claims Act ("MTCA"), presently codified at Md.Code (2006, 2007 Supp.), § 5–522(b) of the Courts & Judicial Proceedings Article ("C.J.").[3] *See Hines I,* 157 Md. App. at 553–57, 560–65, 578–79, 852 A.2d 1047. Moreover, we recognized that the complaint "implicitly raised the issue of excessive force," although an excessive force claim was not set forth in a separately numbered count. *Id.* at 574, 852 A.2d 1047. We pointed out that the complaint "use[d] language . . . to suggest that Deputy French used excessive force," in violation of the federal and State constitutions. *Id.* Therefore, we instructed the circuit court, on remand, to permit the Hines to amend their complaint to separately allege a claim of excessive use of force. *Id.* at 574 n. 12, 852 A.2d 1047.

With respect to Ms. Hines's implied claim of excessive force, we said, *id.* at 574–75, 852 A.2d 1047 (internal citations omitted):

> The standards for analyzing claims of excessive force are the same under . . . the Maryland Constitution as that under the Fourth Amendment of the United States Constitution. "The test for whether police officers have used excessive force is 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.'"

Applying that standard, we opined that appellees "provided sufficient support for the assertion that Deputy French used unreasonable force." *Id.* at 578, 852 A.2d 1047. We stated, *id.* (internal citation omitted):

> Had Deputy Sheriff French been confronted with several occupants of the vehicle or had there been an indication that

---

**3.** Although the Courts & Judicial Proceedings Article has been recodified during the pendency of this case, the applicable provisions of the MTCA have not been amended.

appellant harbored a weapon or had resistance been offered once [Ms. Hines] alighted from the truck, the reasonableness of the force exerted would be cast in a different light. Viewing the alleged facts in a light most favorable to [Ms. Hines], a jury could conclude that Deputy French used excessive force when he pointed his gun at [Ms. Hines], "grabbed her and threw her up against the side of her truck," and "slamm[ed] her head into the side of the truck." Although Deputy French gives an entirely different account of the events, the resolution of any factual disputes are for trial and not summary judgment.

However, we affirmed the circuit court's dismissal of the other claims against French, including the claim of battery. *Id.* at 550–53, 852 A.2d 1047. As to Ms. Hines's battery claim, the *Hines I* Court observed that French had initiated the stop of Ms. Hines because he had received information from a dispatcher that mistakenly identified her vehicle as one involved in an earlier hit-and-run accident. *Id.* at 552, 852 A.2d 1047. We stated: "[B]attery 'can only occur when there is no legal authority or justification for the arresting officer's actions.' " *Id.* at 551, 852 A.2d 1047 (citations omitted). In our view, "Deputy French had legal justification to arrest" Ms. Hines because "the information issued by the 911 dispatch [erroneously] included the make and model of [Ms. Hines's] truck, her Maryland license tag number, and her approximate location on Route 40. Deputy French had no reason to disbelieve the information and . . . he had sufficient probable cause to stop and place her under arrest." *Id.* at 552, 852 A.2d 1047.

The *Hines I* Court concluded that the legal justification for arrest did not shield French from all liability for the manner in which the arrest was conducted. As to the allegations of negligence, we said, *id.* at 564–65, 852 A.2d 1047 (internal citations and footnote omitted):

[Ms. Hines has] sufficiently alleged facts that create an inference of malice concerning Deputy French's actions. Based on [Ms. Hines's] version of her traffic stop and arrest, Deputy French, without provocation, grabbed her

and intentionally injured her face despite having noticed that she had recent TMJ surgery. [Ms. Hines] reported that Deputy French laughed and told her it must have hurt as he forced her face into the side of her vehicle. The allegations essentially suggest that Deputy French deliberately and willfully targeted [Ms. Hines's] preexisting injury and that he laughed or made other verbal statements indicating an intent to harm her. Assuming a jury found these allegations to be true, Deputy French's conduct would constitute malice and, thus, qualified immunity would not be available to him as a defense.

In ruling that Deputy French's alleged conduct did not constitute malicious behavior, the trial court apparently disregarded [Ms. Hines's] version of events and found Deputy French's story to be more credible. Summary judgment is not a substitute for trial because it does not provide the proper opportunity for the trial court to give credence to certain facts and refuse to credit others. Consequently ... we hold that summary judgment was not the correct disposition of [Ms. Hines's] negligence claim against Deputy French.

Following our decision in *Hines I*, appellees filed an Amended Complaint on July 22, 2005, which included four counts: malicious prosecution, negligence, excessive force (citing both federal and state constitutional grounds), and loss of consortium. The Amended Complaint contained a separate *ad damnum* clause for each count. Ms. Hines requested $500,000 in compensatory damages and $1 million in punitive damages for malicious prosecution, and appellees sought $1 million compensatory and $1 million punitive damages for loss of consortium. Notably, Ms. Hines did not request punitive damages for either the negligence count or the excessive force count; instead, she requested compensatory damages of $750,000 for each of those counts.

Appellant filed his Answer on July 29, 2005. On August 5, 2005, he filed a Supplemental Motion and Memorandum for Summary Judgment Addressing Amended Complaint. As to the malicious prosecution count, appellant argued that Ms.

Hines's conviction for failure to remain in her lane confirmed that there was probable cause for the prosecution, and that the alleged facts were insufficient to establish malice. As to the negligence claim, appellant contended that he was immune, pursuant to the MTCA. In addition, he maintained that the excessive force claim was time-barred, and was also precluded under the "law of the case" doctrine, based on this Court's affirmance in *Hines I* of the grant of summary judgment on the battery count. According to appellant, because the foregoing counts were defective, the loss of consortium claim also could not stand. Appellees opposed the motion.

In a Memorandum Opinion filed on November 15, 2005, the court denied the motion for summary judgment as to all counts. The court reasoned that our decision in *Hines I* had determined that summary judgment was not appropriate as to the malicious prosecution charge. Moreover, the court noted that qualified immunity under the MTCA does not attach when a State employee acts with malice or gross negligence. Therefore, because the *Hines I* Court determined that appellees' allegations sufficiently alleged negligence and malice, the court denied summary judgment on the negligence count. Finally, as to the excessive force claim, the court reasoned that we had determined in *Hines I* that appellees stated a claim of excessive force, and had indicated that, on remand, the circuit court should allow appellees to amend their complaint to allege the claim in a separate count. Therefore, the court denied summary judgment, ruling that, "under the law of the case as set forth by the Court of Special Appeals in its opinion, the Plaintiff's [sic] Amended Complaint should be allowed to stand with the addition of the excessive force count."

Another member of the court conducted a four-day jury trial in December of 2006. Ms. Hines testified that, on the evening of August 29, 1998, she was returning from a bridal shower in Baltimore to her home in Belcamp in Harford County. Two weeks earlier, she had undergone surgery to correct a disorder of her temporomandibular joint ("TMJ"), which connects the lower jaw to the skull. On the day in

question, she had visible stitches on the right side of her face and, as a result of the surgery, was experiencing pain and difficulty in talking.

While Ms. Hines drove along Route 40, approaching the intersection with Route 24, she observed a police car with its lights on behind her, and a second police car pulling along side her on the left, motioning for her to pull over. She pulled onto the shoulder, stopped the vehicle, lowered her window, and turned off the engine. The following testimony is relevant:

> [APPELLEES' COUNSEL]: [W]hen you pulled off, what happened next?
>
> [MS. HINES]: The police car was behind me kind of like on an angle, the police officer got out of his vehicle, came running up to my truck with his gun pulled out and had it pointed to my head and was where he could see them, put your hands where I hands on the steering wheel where he could see them
>
> * * *
>
> Then he told me to get out of the vehicle.... I got out of the vehicle. As I got out of the vehicle, he grabbed me by my left arm, twisted my wrist, and put my left arm up into my back. After that he slammed me up against my truck.
>
> [APPELLEES' COUNSEL]: What part of your truck were you—did that happen [sic]?
>
> [MS. HINES]: My whole body.
>
> [APPELLEES' COUNSEL]: What part of the truck did your body strike?
>
> [MS. HINES]: The side of my truck.
>
> * * *
>
> [APPELLEES' COUNSEL]: And what happened next?
>
> [MS. HINES]: After that he took my head and smashed my head into the side of my truck. He said, It looks like you had surgery, it looks like TMJ surgery, that must be painful, and then he said, Ha ha. Then after that he took my right wrist and arm, and put that up behind my back

and put the other handcuff on. After that he told me to stand there, do not move. He went around my vehicle, he came back to me and he grabbed me, he told me I was under arrest for a hit-and-run, he grabbed me by the handcuffs, took me to the police vehicle, put me in the police vehicle on the right side in the back, and shut the door.

\* \* \*

[APPELLEES' COUNSEL]: Ms. Hines, when you were seated in the police vehicle, can you describe for us, as you looked out the window, first what you could see, what you could observe?

[MS. HINES]: I could see that there was other police officers that came to the scene. The officers went around my truck. I could see that the officers were talking and I could see that the officer that pulled me over was very upset.

\* \* \*

[APPELLEES' COUNSEL]: What could you hear of the conversation of the police officers?

[MS. HINES]: Saying it wasn't the vehicle.

Ms. Hines identified appellant as the police officer who arrested her. Despite the officers' apparent realization that Ms. Hines had not been involved in a hit-and-run accident, she remained handcuffed in appellant's police vehicle. Ms. Hines claimed that she told Officer French that "the handcuffs were too tight," but he did not loosen them. By this time there were both Harford County and Baltimore County officers at the scene. According to Hines, appellant "wanted [her] to have a breath test," and so a test was administered by another Harford County officer. Although Ms. Hines repeatedly "blew zeroes" when several tests were administered, she was "escorted to the precinct" in appellant's vehicle.

At the precinct, Ms. Hines "sat on a bench, [and appellant] sat catercornered to [her] but kind of close...." According to Ms. Hines, she repeatedly asked appellant "if he could please loosen these handcuffs because they were hurting my wrists, and he did not." After Ms. Hines had been handcuffed

"approximately an hour," appellant removed the handcuffs and allowed Ms. Hines to use the bathroom. When she emerged, appellant informed her, "Your husband's here. If you sign these tickets, you can leave." She explained that she "signed the tickets cause I just wanted to get away from him." As noted, the three traffic tickets were for failure to maintain her lane, negligent driving, and eluding the police. According to Ms. Hines, when she left the precinct her wrists "were bloody and they had marks." Her wrists and left arm felt also "[v]ery painful." As to her face, she said: "I had the pain from the TMJ, but having my face pushed like it was, it hurt bad." She added that her face "bothers me still today."

Three days later, Ms. Hines's friend, Scott Beall, an Aberdeen police officer, took photographs of her wrists and face, which were entered into evidence. Ms. Hines stated that the pictures showed "the right side of my face where I had the TMJ surgery . . . and where the handcuffs were too tight on my wrists."[4] The photos of her wrists showed red abrasions from her wrists up to approximately the elbow, on both arms. She recounted that the lacerations became infected, for which her doctor prescribed a cream medication. She also claimed that the abrasions took two and a half weeks to heal, and left some scarring. In addition, Ms. Hines said that she still has pain in her wrists, as well as "spasms, a lot of pain in my left shoulder, [and] I have a lot more migraines that are horrible."

Referring to the period following the arrest, Ms. Hines stated: "I don't want to go anywhere, I don't want to do anything, I didn't want to associate with anybody, I was withdrawn, I stayed to myself, I feared that the police would, you know, come to my house, I couldn't do housework, I couldn't do anything." She also lost 60 pounds over an eight-month period. In 1999, Ms. Hines got a job at a convenience store, at which she worked for eight months. On one occa-

---

4. On cross-examination, Ms. Hines clarified that the photograph of her face showed the right side of her face, on which she had the surgery, but did not show the left side of her face, which appellant allegedly pushed into the side of her truck.

sion, appellant happened to come into the store while Ms. Hines was there. She testified that his presence caused her to have a flashback of the incident, and she quit her job the same day. She said that she had not worked since then.

Ms. Hines; her husband; her stepson, Jason Hines; and her psychiatrist, Dr. Janan Broadbent, all testified to various aspects of Ms. Hines's lingering psychological injuries and post-traumatic stress disorder as a result of the incident. In light of the issues on appeal, we need not detail that testimony.[5]

At the close of appellees' case, appellant made a motion for judgment. Appellant's counsel argued that appellees had not proven their claim of malicious prosecution, because they had not shown that appellant lacked probable cause to cite Ms. Hines for a traffic violation. In a ruling that appellees do not contest, the court granted appellant's motion as to the malicious prosecution claim.

Appellant's counsel next addressed the negligence claim, stating that appellant was entitled to immunity under the MTCA, "provided that he acted within the scope of his employment—and there's no dispute about that—and that he acted without malice." His counsel contended: "If in fact he acted with malice, actually the complaint should have been pled differently, because negligence is alleging unreasonable behavior not malicious behavior. But be that as it may ... even so, Deputy French was not negligent...." Appellant's counsel continued:

> [T]he Court of Special Appeals has held that the previous count of battery ... the use of force to effectuate the arrest, was privileged, so there's no way that the plaintiff can now argue, well, even though it was privileged under the law of this case, it's still a breach of a duty and therefore negligent.

---

**5.** The outcome of appellant's challenge to the loss of consortium claim depends on the outcome of his other contentions.

Defense counsel also argued that appellees had not established the applicable standard of care. Counsel for appellees responded that, based on the testimony presented, "there can be no standard of care that permits [appellant's conduct] under the circumstances as described here."

The court denied the motion for judgment as to the negligence claim, reasoning:

Well, the Court of Special Appeals says in their [sic] opinion that the appellants have asserted a negligence claim, and that negligence is the failure to use reasonable care under the circumstances, and that's going to be a jury question as to what is reasonable under the circumstances of this particular case. It's a case that involves potential immunity ... and in this particular case the defendant may avoid liability for a claim of negligence if his conduct was within the scope of his official duties and that he acted without malice or gross negligence.

Well, has the plaintiffs' case, number one, established conduct which one might consider to be unreasonable conduct under the circumstances? I think that it has. At least if you accept the testimony, which is what I'm bound to do at this point in time.

Is there malice? Well, if you look at the Court of Special Appeals' opinion, they say that the appellants in the summary judgment action have sufficiently alleged facts that claim, based on her version of the traffic stop and arrest, that:

"Deputy French, without provocation, grabbed her and intentionally injured her face despite having noticed that she had recent TMJ surgery. Appellant reported that Deputy French laughed and told her it must have hurt as he forced her face into the side of her vehicle."

Well, that didn't exactly happen in this case, but there was an allegation that she was forced into the side of the vehicle. That allegation, plus the handcuffs allegation,

"essentially suggests that Deputy French deliberately and willfully targeted appellant's preexisting injury and that

he laughed or made other statements indicating an intent to harm her."

And then it says:

"Assuming a jury found these allegations to be true, Deputy French's conduct would constitute malice and, thus, qualified immunity would not be available to him as a defense."

It's wonderful when a case is already decided by an appellate court and there's an opinion that the court can refer to and reach a conclusion, so I'm denying that motion for judgment.

\* \* \*

I think [the jury] can determine what reasonable care should be under the circumstances. I don't believe you have to have an expert come in here and establish a standard in accordance with police conduct, they're entitled to make a finding as to what reasonable conduct of a police officer is.

Appellant's counsel then argued for judgment on the excessive force claim. In light of the centrality of this argument to the issues on appeal and the standard of review for a JNOV motion, we shall quote the dialogue extensively (emphasis added):

[APPELLANT'S COUNSEL]: With respect to Count 3, which frankly is probably the most difficult count to deal with, in part because there is no such tort of excessive force and that's what the count is entitled, and of course I understand it to be, although it doesn't allege this very clearly, but I understand it to be an allegation of the constitutional violation, and if it's a constitutional violation alleging the use of unreasonable force, it would be considered under the Fourth Amendment to the United States Constitution and Article 26 of the Maryland Constitution. Again, the pleading is not at all specific in that way and frankly I believe it's defective, it has not provided adequate notice to the defendant, but we're prepared to deal with it today. However, the other issue with it is that this is a

wholly new claim, and I understand that the Court of Special Appeals suggested to the appellants that they might have a claim for excessive force and perhaps they ought to amend their complaint, which of course they did, but Your Honor, this is a new claim that's been brought outside the statute of limitations.

\* \* \*

That's one issue, just a purely legal issue. The other issue kind of goes back to what I talked about under the negligence claim with respect to the court having ruled that the battery was privileged. Whether we like it or not, the court quite clearly said, yes, summary judgment was granted in Deputy French's favor on the count of battery. That's the law of the case. If there is no battery, if the battery was privileged, if there was no battery, I don't see any way that the plaintiff can meet her burden of proof that the force used was unreasonable. And that's the standard; not was it excessive because she thinks it was excessive. The question under the Fourth Amendment, per *Graham v. Connor*, [490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989),] is was the force used, was it unreasonable force? If the battery was lawful, it's legally inconsistent to be able to say, okay, but it was unconstitutional because it was unreasonable. We can't get there under the law.

In addition to which, as I said in my opening statement, this is a case that says that the application of handcuffs, even if they're too tight, is not a constitutional violation, and, frankly, in this case we have insufficient evidence of physical injury attached to the alleged constitutional violation. There may have been some slight injury, but certainly not the sort of injury that rises to the level of a constitutional violation, which the absence of significant injury tends to corroborate the fact that the force used was reasonable.

But my more important point obviously is the previous one, that the battery is privileged, and if the court has ruled that his touching of her was lawful, it's incongruous to make the argument that it's unreasonable under the Fourth Amendment, and so we're asking for judgment on Count 3.

THE COURT: Well, does battery necessarily preclude the finding of excessive force? Battery is an unlawful touching.

[APPELLANT'S COUNSEL]: Well, I think that if there is an underlying battery, that may have been force that is constitutionally unreasonable, but here, because the battery was privileged, as the Court of Special Appeals says, there is no underlying battery, so I think it works the same way if there's no underlying battery.

THE COURT: Well, what I'm thinking out loud is—and I'm not ruling yet—but what I'm thinking out loud is if there was a battery, an unlawful battery, which is an unlawful touching, that could have been a touching that was not using excessive force.

[APPELLANT'S COUNSEL]: Correct, I agree.

THE COURT: But if that battery, in its purest sense, at its lowest level, rises to excessive force, is that also privileged?

[APPELLANT'S COUNSEL]: No, I think where courts would draw a line would be that force that's reasonably necessary to effectuate an arrest is still reasonable and part of the privileged battery. Now, whether we agree with the Court of Special Appeals or not on its finding that the force allegedly used by Deputy French here was more than what was reasonable, we can't go there because the court has already told us, on the facts viewed in the light most favorable to the plaintiff, on the facts in the Court of Special Appeals' opinion, that the battery was privileged.

THE COURT: So you're saying that the battery was privileged, so it's reasonable?

[APPELLANT'S COUNSEL]: Yes. It was not unreasonable, and the burden—or the plaintiffs' burden is to prove the force used was unreasonable, and I believe she's legally esstopped [sic] from asserting that because of the ruling of the Court of Special Appeals on the battery question.

THE COURT: All right. [Appellees' counsel]?

[APPELLEES' COUNSEL]: Thank you. First, Your Honor, this is the second time we've heard this argument. Judge Carr ruled on the supplemental motion for summary

judgment on that exact point and relied, I believe, on the authority stated in this opinion or from the "law of the case" doctrine, in that the same court which did what [appellant's counsel] said in affirming the dismissal of the battery count, also made this decision and sent it back for trial, saying that on the face of it, as presented in the pleadings, a count for excessive force had been stated or could be stated, and we stated it.

The proof of whether the force is objectively reasonable under these facts goes back partly to the argument that I just made to you in the previous count, that would an objective, reasonable police officer or person consider these actions to be okay or over the line. If this is okay, I'm going to get my passport stamped, because I can't live under these circumstances if that's the standard that is to obtain in this state or this country, and that's why we have the federal protections for individuals, because the founders were aware that men make laws and men break laws, and sometimes the men that break laws are the ones that are sworn to uphold them. It's not a majority, certainly, and for that we're grateful, but it does happen, and we think we've pled sufficient facts to show certainly that the force utilized on this occasion, if you look at it through two prisms, one, as the Court of Special Appeals looked at the situation, they said on page 578 of the opinion, Your Honor:

"Had Deputy Sheriff French been confronted with several occupants of the vehicle—," which is not present in the facts here, "—or had there been an indication that appellant harbored a weapon—," which isn't in the facts presented in this case, "—or had resistance been offered once appellant alighted from the truck, the reasonableness of the force exerted would be cast in a different light."

If you up the ante and there's a threat to the officer, apparently there is more latitude. That's reasonable and understandable. But on the facts of this case, you have a compliant person, Mrs. Hines, who gets treated the way she's treated, and what the court said about that next in

their opinion, they said a jury could conclude for a traffic stop, if you're going to say it's a traffic stop for negligent driving and failure to stay in a lane, that he pulled his pistol and pointed it at her, " 'grabbed her and threw her up against the side of her truck' " and " 'slammed her head into the side of the truck,' " as opposed to another viable option for him, which was, Ma'am, there's been a lookout from Baltimore County, you're going to have to stay here until they come up and then we'll resolve this thing about whether or not your vehicle was involved in an accident. Would you kindly sit here, with or without cuffs on. That's a difference in scope and kind from what happened, according to the evidence presented by the plaintiff and that's before the court at this time.

And the court I think significantly then concludes that part of the discussion by saying:

"Although Deputy French gives an entirely different account of the events, the resolution of any factual disputes are for trial and not summary judgment."

And what I said to Judge Carr I respectfully repeat to you, that I think the "law of the case" doctrine, if you think that we've put on an excessive force case, the argument's been ruled against the County by Judge Carr, and even Judge Carr says I'm relying on the law of the case based on what the Court of Special Appeals has said.

\* \* \*

THE COURT: The evidence, as it stands at this point, really is that there was a traffic stop, that eventually the plaintiff pulled over to the side of the road, and there was also some testimony, too, that is significant, that she disappeared after she pulled over, she sort of disappeared out of sight when she reached over to get her purse, and when she gets up there's an officer with a drawn gun. That's significant, but that, in and by itself, would not be sufficient to take it away from them on the motion, but it is a significant argument. And, of course, there is also the testimony with respect to having been slammed into the side of the truck, and also that the handcuffs were deliberately too tight, so

all of that together, that conduct itself, it's probably a jury question, but I do want to see or look at the argument you've made, counsel, and I want to see how Judge Carr also treated it before I rule.

If what you say is correct, it probably is the law of the case. I think the facts established over the last two days are probably the same that he used to make his decision on the summary judgment. I don't know that it's changed much from the very beginning of the case and from when it was filed through the Court of Special Appeals and back again on another motion, and if that was the ruling, then you can pretty much count on the fact that that's going to be my ruling, that I'm not going to change the law of the case based on the argument you just made, but I am going to look at it.

So we'll leave here today with the malicious prosecution gone for want of proof of probable cause; the negligence count remaining in; and then I guess the last count of—I'm not keeping score here, but that probably will stay in also, so tomorrow you'll have those two counts to deal with.

The following morning, before appellant began his case, the court denied the motion for judgment, "based on the fact that the evidence in this case, in a light most favorable to the plaintiff, has in fact presented a jury issue."

Appellant testified in his own defense, and also presented the testimony of Detective Sergeant John Cook of the Maryland State Police, who was the officer driving the other vehicle that participated in the stop of Ms. Hines. Appellant's account of the events differed significantly from Ms. Hines's. In light of the jury's finding of liability and our standard of review, we need not recount appellant's version of events, as we must view the facts in the light most favorable to appellees. *See* note 2 *supra.* Nevertheless, for context, we shall quote appellant's testimony concerning the traffic stop.

Appellant testified that he followed Ms. Hines's vehicle for "well over a mile" before she stopped. He commented that he believed she was intoxicated, because she was "[n]ot stopping

and she also was swerving within her lane." Appellant's testimony continued:

[APPELLANT'S COUNSEL]: After Mrs. Hines stopped, what happened?

[APPELLANT]: I got out of my police vehicle and started walking up to hers, and she furtively reached under the seat area.

[APPELLANT'S COUNSEL]: What do you mean, furtively?

[APPELLANT]: Suspiciously. It alerted me. I thought that there was danger in that. I was taught in the police academy that any time anybody reaches under a seat, they may be reaching for a weapon.

[APPELLANT'S COUNSEL]: And what did you do?

[APPELLANT]: Drew my weapon.

\* \* \*

When she reached under the seat, then I commanded for her to—and I'm a pretty loud guy, so you can imagine when I yell—Put your hands up, and I grabbed my weapon and drew it out and brought it up [with my] trigger finger down the side of the weapon. . . . I commanded her to show me her hands. When she reached under the seat, I was fearful she was going to come up with something.

[APPELLANT'S COUNSEL]: Did you give any additional commands?

[APPELLANT]: Get out of the vehicle.

\* \* \*

[APPELLANT'S COUNSEL]: Did you ever put your finger on the trigger?

[APPELLANT]: No.

[APPELLANT'S COUNSEL]: Did you ever point the gun at her head?

[APPELLANT]: No.

[APPELLANT'S COUNSEL]: Did she get out of the vehicle?

[APPELLANT]: She did.

[APPELLANT'S COUNSEL]: What happened next?

[APPELLANT]: She was placed under arrest.

[APPELLANT'S COUNSEL]: And what does that mean?

[APPELLANT]: She was handcuffed.

[APPELLANT'S COUNSEL]: How did you go about hand-cuffing her?

[APPELLANT]: I asked her to place her hands behind her back and I put the handcuffs on behind her back.

[APPELLANT'S COUNSEL]: Did she place her hands behind her back when you asked her to?

[APPELLANT]: I don't recall, and I don't mean this to sound like a cop-out, it's just hard for me to remember a very basic kind of traffic stop seven years ago. I've done thousands of traffic stops in the years I was a policeman, hundreds of arrests, and I just don't recall, but it also doesn't stick out in my mind that she resisted, so I don't think that happened either.

Appellant denied that he made Ms. Hines's handcuffs too tight. He also denied slamming her head into the side of the truck or using any physical force against her beyond handcuffing her.

At the close of the defense case, and outside the jury's presence, the court advised that it "need[ed] an opportunity to look" at the jury instructions. The court told counsel to return at 3:30 p.m. to review the draft instructions and said: "[T]hen we can discuss any possible revisions."[6] The court also asked appellant's counsel if there were any motions. She replied: "I'm renewing my motion for judgment." When the court asked if she "wish[ed] to be heard," appellant's attorney responded: "No, Your Honor." The court then denied the motion. The next day, December 8, 2005, the court propounded its instructions to the jury. The court read the instructions to the jurors and also gave them a printed copy of the

---

6. If the court discussed the jury instructions with counsel, the discussion is not contained in the transcript.

instructions.[7] The following jury instructions are pertinent to the issues on appeal:

Now, for the purpose of this case, I am instructing you that Deputy French is considered to be a State employee, even though he is or was at the time a Harford County Deputy Sheriff.... *State employees are granted qualified immunity against negligence claims for acts conducted within the scope of their duties, provided that the State employee acted without malice. For the purposes of immunity, malice is defined as an act without legal justification based on improper motives. Examples of improper motives are acts committed with bad intentions, evil motives, spite, hatred, or ill will; the purpose being to deliberately and willfully injure the plaintiff.*

* * *

Now, as to excessive force. Plaintiffs claim that the defendant used excessive force in discharging his duties in violation of the Fourth Amendment to the United States Constitution and in violation of Articles 24 and 26 of the Maryland Constitution. Now, the standards for analyzing claims of excessive force under the United States Constitution are somewhat different than under the Maryland Constitution.

Under the United States Constitution, the test for whether a police officer used excessive force is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him. The reasonableness standard requires one to pay careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he or she was actively resisting or attempting to evade arrest by flight.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The

---

7. The oral and printed versions were substantively identical.

calculation of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that's necessary in a particular situation. The plaintiff has the burden of proving by a preponderance of the evidence that the defendant used excessive force in effectuating an arrest in violation of the U.S. Constitution.

*Now, police officers under the Maryland Constitution and under the Maryland statutes are entitled to qualified immunity under Maryland law, so under the Maryland Constitution, in order to find that a police officer used excessive force in the course of his duties, you must find that the officer violated the reasonableness standard and that the officer acted with malice,* and both of those terms, the reasonableness standard and malice, were previously defined in the course of these instructions. Again, the plaintiff has the burden of proving by a preponderance of the evidence that the defendant use excessive force in effectuating an arrest in violation of the Maryland Constitution.

\* \* \*

Now, in the event that you find for the plaintiff on the issue of liability, that is, that you find that the defendant was either negligent or used excessive force, then you must go on to consider the question of damages.

\* \* \*

If you find for the plaintiff and award damages to compensate for the injuries suffered, if any, you may go on to consider whether to make an award for punitive damages. *You are instructed as a matter of law that the plaintiff is not entitled to punitive damages for the negligence claim or for the excessive force claim under the Maryland Constitution. You may only consider punitive damages if you find that the defendant is liable for the excessive force claim made under the United States Constitution* . . . .[8]

---

**8.** As we shall discuss, the court did not articulate any threshold requirement for an award of punitive damages with respect to excessive force.

An award for punitive damages should be in an amount that will deter the defendant and others from similar conduct, proportionate to the wrongfulness of the defendant's conduct and the defendant's ability to pay, but not designed to bankrupt or financially destroy a defendant.

An award of punitive damages must be proven by clear and convincing evidence rather than by a preponderance of the evidence. Clear and convincing evidence requires more than a preponderance of the evidence, but less proof than that of beyond a reasonable doubt. To be clear and convincing, the evidence should be clear in the sense that it is certain, plain to the understanding and unambiguous, and convincing in the sense that it is so reasonable and persuasive as to cause you to believe it. (Emphasis added.)

Neither appellant nor appellees objected to any of the court's instructions. After counsel for each side delivered closing arguments, the court distributed a verdict sheet to the jury. The content of the verdict sheet is reproduced below.

## VERDICT SHEET

1. Do you find that Defendant, John French, acted with malice while effectuating the arrest of Plaintiff, Mary Ann Hines, on August 29, 1998?

 Yes _____

 No _____

 If you answered "yes" then go on to question 2.

 If you answered "no" then go on to question 4.

2. Do you find that Defendant, John French, was negligent while effectuating the arrest of Plaintiff, Mary Ann Hines, on August 29, 1998?

 Yes _____

 No _____

 Go on to question 3.

3. Do you find that Defendant, John French, used excessive force in violation of the Maryland Constitution while

effectuating the arrest of Plaintiff, Mary Ann Hines, on August 29, 1998?

Yes _____

No _____

Go on to question 4.

4. Do you find that Defendant, John French, used excessive force in violation of the United States Constitution while effectuating the arrest of Plaintiff, Mary Ann Hines, on August 29, 1998?

Yes _____

No _____

If you answered "no" to questions 1 and 4 or to questions 2, 3, and 4, then stop deliberating and notify the bailiff that you have reached a verdict.

If you answered "yes" to either question 2, 3, or 4, go to question 5.

5. What amount of compensatory damages, if any, do you award to Plaintiff, Mary Ann Hines?

A. past medical expenses $ _____
B. future medical expenses $ _____
C. past lost earnings $ _____
D. future lost earnings $ _____
E. non-economic damages $ _____

6. What amount of compensatory damages, if any, do you award to Plaintiff, Leon Hines?

A. loss of consortium $ _____

7. If you answered "yes" to question 4, what amount of punitive damages, if any, do you, by clear and convincing evidence, award to Plaintiff, Mary Ann Hines?

$ _____

After distributing the verdict sheet, the court gave some final instructions to the jury:

[A]ll you have to do in structuring your verdict is to follow the questions that have been set forth in here.

For instance, question number one is: Do you find that defendant, John French, acted with malice while effectuat-

ing the arrest of plaintiff, Mary Ann Hines, on August 29th, 1998? The answer is yes or no. You have to find whether or not you believe there was malice.

If the answer is yes, then the instructions are to go to question number 2, and go to question number 3. Questions 2 and 3 involve the negligence of or alleged negligence of John French, and the alleged excessive force in violation of the Maryland Constitution, so you've first got to answer questions 2 and 3 because each of them requires a finding of malice.

*If you answer no to question number 1, that is, you find no malice, then you go to question 4, because that doesn't require malice, that's the only one that does not require a finding of malice, and so you make the decision whether or not you find that the defendant used excessive force in violation of the United States Constitution.*

Now, if you answer no to question 1 and question 4, that there was no excessive force in violation of the United States Constitution, then stop deliberating, there's nothing else to decide, because by answering no to questions 1 and 4, you've answered all the questions required to be answered. Or if you answer no to questions 2, 3 and 4. If you found malice but didn't find negligence or excessive force, then you've also reached a verdict and that would be a verdict for the defendant.

*Now, if you answer yes to any one of these three questions, 2, 3 or 4, then you keep on deliberating with respect to damages,* and question number 5 is: What amount of compensatory damages, if any, do you award to the plaintiff, Mary Ann Hines, and there's a list, past medical, future medical, past lost earnings, future lost earnings, and non-economic damages, and next to each of those items is a line to write the amount of damages for each once of those particular items.

Question 6 involves plaintiff Leon Hines, and that says: What amount of compensatory damages, if any, do you award to plaintiff, Leon Hines, for loss of consortium. If

you find there are damages as to that count, write the amount in there.

*And finally, if you answer yes to question 4, keeping in mind that question 4 involves excessive force in violation of the United States Constitution, what amount of punitive damages, if any, do you find by clear and convincing evidence.* And remember, there's a different standard for punitive damages, it must be by clear and convincing evidence, not by a preponderance of the evidence. Everything else is by a preponderance of the evidence, but punitive damages you have to find by clear and convincing evidence as defined in the instructions I previously gave you. (Emphasis added.)

So it sounds pretty simple and it is. Just follow the verdict sheet.

Once again, no objections were raised to the verdict sheet or to the court's instructions. After four hours of deliberation, the jury returned to the courtroom with its verdict. With respect to Question One, the jury checked "No" with respect to the question of whether appellant "acted with malice while effectuating the arrest of Ms. Hines, on August 29th, 1998[.]" Accordingly, it did not reach Questions Two or Three, as to negligence or use of excessive force, in violation of the Maryland Constitution. Instead, it proceeded to Question Four, and checked "Yes," *i.e.,* it found that French "used excessive force in violation of the United States Constitution while effectuating the arrest of plaintiff, Mary Ann Hines, on August 29th, 1998[.]" It awarded Ms. Hines $5,000 for past medical expenses, $5,000 for future medical expenses, $2,000 for lost earnings, and $38,000 for noneconomic damages, for a total of $ 50,000 in compensatory damages (it awarded no damages for future lost earnings). It also awarded $5,000 in compensatory damages to Mr. Hines for his consortium claim, and $10,000 to Ms. Hines for punitive damages.

Appellant's counsel raised no objection when the jury's verdict was read. Accordingly, on December 9, 2005, the

court entered judgments of $60,000 in favor of Ms. Hines and $5,000 in favor of Mr. Hines.

On December 16, 2005, appellant filed a motion for JNOV, which appellees opposed. The court heard argument on February 22, 2006,[9] and issued a Memorandum Opinion and Order on June 7, 2006, denying appellant's motion. Because the court's Memorandum Opinion aptly summarizes the positions of the parties, we shall quote from it to provide the parties' contentions as well as the court's ruling.

The court observed that Rule 2–532 "strictly limits consideration of grounds supporting JNOV to those raised in the motion for judgment." Therefore, it stated that it would "only consider the arguments made at the conclusion of the Plaintiffs' case and which Defendant properly renewed in the motion now before this Court."

Appellant first argued that appellees "presented insufficient facts to support the jury's verdict on the excessive force count because an officer's drawing of his weapon is not an impermissible use of force." He also contended that his display of his weapon was reasonable and justified under the circumstances, because he had probable cause to suspect that Ms. Hines might be dangerous: she was a suspect in a hit-and-run, she refused to pull over when ordered to do so, and, as he approached her truck, he saw Ms. Hines reach down within the vehicle. Moreover, appellant stated that appellees "offered no medical testimony and only presented evidence of minor, *de minimis* injuries, such as wrist lacerations and swelling on the left side of her face." In his view, this constituted "insufficient evidence of the egregious nature of the injuries necessary to maintain a federal constitutional claim for excessive force."

Appellees countered that "the Court of Special Appeals properly set forth the test for whether a police officer used excessive force: 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting

---

9. No transcript of this proceeding has been provided.

them.'" Appellees maintained that the jury had sufficient evidence upon which to find Defendant used excessive force and properly did so.

Addressing these contentions, the court said:

At the conclusion of Plaintiffs' case, Defendant failed to argue, as he now does, that an officer's drawing of his weapon is not an impermissible use of force under the Fourth Amendment. Therefore, that argument will not be considered, pursuant to Rule 2–532.

Defendant did argue, albeit briefly, that Plaintiffs never established that Mrs. Hines suffered the serious or permanent injury necessary to recover on a claim for excessive force. Thus, Defendant properly preserved this argument for JNOV review.

The court rejected appellant's argument that a serious or permanent injury was a *sine qua non* of an excessive force claim. Citing *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), as well as our decision in *Hines I*, the court reasoned, (citations omitted):

Allegations of excessive force arising from an arrest or investigatory stop, such as in the case at bar, implicate the Fourth Amendment's protection against unreasonable searches and seizures.... [T]he test whether a police officer used excessive force under the Fourth Amendment "is 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.'" ·

Further, the court noted that in *Hines I* we found that appellees' allegations stated a viable cause of action for excessive force, when viewing the facts in the light most favorable to appellees. The court observed: "At trial, the jury resolved such factual disputes in Plaintiffs' favor." The court continued:

Defendant now seeks to overturn both the Court of Special Appeals as well as a jury's determination on this matter. Those efforts, however, fail. As stated *supra*, to overturn a jury's verdict pursuant to a motion JNOV, a court must find that only one reasonable determination may

be made from the evidence adduced at trial. Such a burdensome standard inherently prevents overturning a jury's verdict except in the most egregious and irrational of circumstances. Those circumstances do not exist in the case at bar.

More significantly, the law of the case doctrine prevents overturning the Court of Special Appeals' finding that excessive force was sufficiently pled and was appropriate for fact-finder resolution. That doctrine binds both litigants and lower counts on remand to the rulings of appellate courts on specific findings in the same case. *Nnoli v. Nnoli*, 389 Md. 315, 325 n. 3, 884 A.2d 1215 (2005) (citing *Scott v. State*, 379 Md. 170, 183, 840 A.2d 715 (2004)). As noted, the intermediate appellate court explicitly found that Plaintiffs had sufficiently pled a cause of action for excessive force. Therefore, this Court is bound by that determination on remand.

Appellant also renewed his argument that, based on the determination in *Hines I* that he did not commit a battery, his actions were privileged, thereby precluding any finding of unreasonable, excessive force. In his view, "any finding of excessive force contradicts the law of the case, as well as being logically inconsistent." Moreover, appellant argued that "state excessive force claims made pursuant to Article 26 of the Maryland Declaration of Rights are interpreted *in paria* [sic] *materia* with the federal Fourth Amendment claims." He posited that the jury's finding of liability on the federal violations was inconsistent with its finding of no liability on the state claims, and should therefore be set aside.

Although the court determined that appellant had preserved his argument that liability for excessive force was precluded by the affirmance of summary judgment on the battery claim, it was of the view that the "argument . . . fails in the light of the Court of Special Appeals' opinion." The court reasoned:

The intermediate appellate court held that a cause of action in battery may only be maintained against an arresting officer when the officer had no legal justification for the

detention or arrest. *Hines I*, 157 Md.App. at 551, 852 A.2d 1047 (citing *Williams v. Prince George's County*, 112 Md. App. 526, 554, 685 A.2d 884 (1996)). In other words, whether the arresting officer had probable cause at the outset of the arrest controls whether the officer may be liable for a battery; however, by finding a cause of action for excessive force, the court implicitly held that the privileged nature of a possible battery does not forgo the possibility that the arresting officer may exceed the amount of reasonable force necessary to effect the arrest. In such a case, the cause of action is not grounded in battery, since the arrest or detention was privileged; instead, the cause of action lies in excessive force either under the Maryland or U.S. Constitutions, since it focuses not on whether force was used at all, but whether the force used to effect the arrest exceeded an amount objectively reasonable under the circumstances.

\* \* \*

[The] jury determined that the Defendant went beyond the force necessary to arrest Mrs. Hines, and was thus liable for an excessive force violation of the Fourth Amendment. Both the law of the case, as well as the standard of review, prevent disturbing those determinations.

In addition, the court rejected appellant's argument that state and federal excessive force claims must result in identical verdicts. The court explained that the jury's verdict in favor of appellant on the state constitutional claims was not a finding that appellant did not violate Article 26. The jury "did not reach that question, because it found that Defendant did not act with malice and, thus, was entitled to qualified immunity for any state constitutional violations." Because qualified immunity for non-malicious acts does not apply to federal constitutional claims, however, the court indicated that the inconsistency asserted by appellant was unfounded.

Finally, appellant challenged the award of punitive damages and the award for loss of consortium. The court summarized the arguments:

Defendant argues that punitive damages are improper because Plaintiffs never properly pled punitive damages in the excessive force count of the amended complaint, thus precluding recovery under Maryland law. *More significantly, Defendant asserts that punitive damages must be proven by clear and convincing evidence of actual malice. Because the jury did not find Defendant acted with malice, the jury's award of punitive damages must be set aside.*

Plaintiffs counter that malice need not be proven for federal excessive force violations brought under the Fourth Amendment, which this Court properly instructed the jury. Because the Court properly instructed the jury that it needed clear and convincing evidence to award punitive damages, thus there is no basis upon which to overturn the jury's decision.

\* \* \*

Defendant [also] concludes that because all the underlying counts are fatally flawed, any recovery for loss of consortium damages must also be overturned, since there was no wrongful conduct upon which to base a loss of consortium claim. (Emphasis added.)

The court did not address appellant's contention that the jury's failure to find malice precluded a punitive damage award. But, it rejected appellant's other arguments, stating:

The jury awarded Plaintiffs $10,000 in punitive damages and $5,000 in loss of consortium damages. At no point during arguments on the motion for judgment did Defendant argue that punitive damages were improperly pled, that Plaintiffs presented insufficient evidence supporting an award for punitive damages or that loss of consortium is barred because the underlying torts were defective. Defendant now requests this Court consider such arguments in the motion for JNOV. Because Defendant did not properly preserve these arguments, however, Rule 2–532 does not permit entertaining them in a motion for judgment notwithstanding the verdict.

**236**

### DISCUSSION

#### A.

Maryland Rule 2–532(a) governs motions for JNOV. It provides: "In a jury trial, a party may move for judgment notwithstanding the verdict only if that party made a motion for judgment at the close of all the evidence and *only on the grounds advanced in support of the earlier motion.*" (Emphasis added.) *See Gen. Motors Corp. v. Seay*, 388 Md. 341, 344, 879 A.2d 1049 (2005). In *Lowery v. Smithsburg Emergency Medical Service*, 173 Md.App. 662, 683, 920 A.2d 546 (2007), we reiterated the standard that governs consideration of a motion for JNOV:

> The Court assumes the truth of all credible evidence on the issue and any inferences therefrom in the light most favorable to ... the nonmoving parties. "Consequently, if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the case must be submitted to the jury for its consideration."

(Internal citations omitted). *See Kleban v. Eghrari–Sabet*, 174 Md.App. 60, 85, 920 A.2d 606 (2007).

 An appellate court will uphold the denial of a JNOV "[i]f there is any evidence, no matter how slight, legally sufficient to generate a jury question...." *CIGNA Prop. & Cas. Cos. v. Zeitler*, 126 Md.App. 444, 488, 730 A.2d 248 (1999) (citation omitted). But, we will reverse a denial of JNOV " '[i]f the evidence ... does not rise above speculation, hypothesis, and conjecture,' " or if the trial court's decision is " 'legally flawed.' " *Nationwide Mut. Ins. Co. v. Anderson*, 160 Md.App. 348, 356, 864 A.2d 201 (citation omitted), *cert. denied*, 386 Md. 181, 872 A.2d 46 (2005).

Appellant levels four arguments challenging the court's denial of his motion for JNOV. The first two are challenges to the jury's finding of liability. First, he argues that Ms. Hines's evidence of her injuries was insufficient, as a matter of federal constitutional law, to support recovery for excessive use of force. Second, he advances the alternative contention

that, under the doctrine of "law of the case," a finding of liability for excessive force was precluded by our decision in *Hines I.* Third, appellant argues that an award of punitive damages was barred as a matter of law, because of appellees' failure to demand punitive damages in the excessive force count of their Amended Complaint, and because a punitive damage award was precluded by the jury's finding that appellant acted without malice. Finally, he contends that, "[b]ecause the primary verdict against John French must be vacated, the verdict in favor of the plaintiffs on the allegation of loss of consortium must also be dispensed with."

We shall first review appellant's challenge to the award of punitive damages. His claims are twofold. First, French contends that Ms. Hines did not plead punitive damages in her Amended Complaint. He asserts: "[T]he excessive force count did not make a demand for punitive damages. As such, the circuit court should not have allowed the jury to even consider awarding punitive damages." Second, and "more significantly" in his view, appellant insists that the jury's award of punitive damages is irreconcilably inconsistent with its finding that appellant acted without malice.

In its ruling on appellant's motion for JNOV, the circuit court determined that appellant waived any challenge to the submission of punitive damages to the jury, because he failed to make the argument in his motion for judgment. The court said:

> At no point during arguments on the motion for judgment did Defendant argue that punitive damages were improperly pled, [or] that Plaintiffs presented insufficient evidence supporting an award for punitive damages.... Because Defendant did not properly preserve these arguments, ... Rule 2–532 does not permit entertaining them in a motion for judgment notwithstanding the verdict.

Protesting the circuit court's waiver ruling, appellant asserts: "French's counsel could have no way of knowing before the fact that the jury would award punitive damages along with its finding of 'no malice.' It is absurd to suggest that a

legal challenge to a verdict must somehow anticipate what the jury's error will be in . . . a pre-verdict motion."

▓ We agree with the circuit court that appellant waived his contention that punitive damages were not properly pled in appellees' complaint, but we do so for reasons different from those articulated by the circuit court. Although we agree with appellant that the court erred in ruling that, in a motion for JNOV, he could not raise for the first time his contention of an irreconcilably inconsistent verdict, we conclude that the contention fails on the merits. We explain.

*Southern Management Corp. v. Taha,* 378 Md. 461, 836 A.2d 627 (2003), governs whether appellant's failure to raise the inconsistency contention in the motion for judgment constitutes a waiver, on JNOV review, of his argument that the punitive damage award was inconsistent with the verdict. In that case, Southern Management Corporation ("SMC") and two of its employees, McGovern and Wylie–Forth, were sued for malicious prosecution by a former employee who alleged that McGovern and Wylie–Forth filed unfounded burglary charges against him. *Id.* at 469–70, 836 A.2d 627.[10] SMC was a defendant solely under a theory of *respondeat superior* liability. *Id.* at 467, 836 A.2d 627. The case was tried before a jury, which returned an irreconcilably inconsistent verdict: it found in favor of McGovern and Wylie–Forth but against SMC, even though SMC's liability was predicated solely on that of its employees. *Id.* SMC filed an unsuccessful motion for JNOV, on the ground that it could not be liable if its employees were not. *Id.* at 475, 836 A.2d 627.

The Court of Appeals reversed the trial court's denial of the motion for JNOV. It said, *id.* at 493–95, 836 A.2d 627 (boldface added; italics in original; some citations omitted):

We must point out . . . that SMC selected an inappropriate, although not fatally so, post-judgment instrument for chal-

---

10. *Taha,* 378 Md. 461, 836 A.2d 627, is the third reported opinion concerning the litigation. *See also Southern Mgmt. Corp. v. Taha,* 137 Md.App. 697, 769 A.2d 962 (2001), *vacated,* 367 Md. 564, 790 A.2d 11 (2002).

lenging the jury verdicts in this case. Following the Circuit Court's entry of judgment against SMC but in favor of ... Wylie–Forth and McGovern, SMC filed a Motion for Judgment Notwithstanding the Verdict pursuant to Maryland Rule 2–532. Under that Rule, however, a party may move for judgment notwithstanding the verdict "only if that party made a motion for judgment at the close of all the evidence and *only on the grounds advanced in support of the earlier motion.*" Maryland Rule 2–532(a) (emphasis added). **When SMC moved for judgment at the close of the evidence, the jury, of course, had not rendered a verdict and the issue of inconsistent jury verdicts could not have been raised at that time.** Having not raised the issue in its motion for judgment, SMC should not have relied upon Rule 2–532 as the basis for its post-judgment motion.

Nevertheless, as we recognized in *Allstate Ins. Co. v. Miller,* 315 Md. 182, 189, 553 A.2d 1268, 1271 (1989), **a timely motion for judgment notwithstanding the verdict, which seeks revision of a final judgment, may "invoke the court's revisory power under Md. Rule 2–535(a)."** This holds true, even if the grounds for the motion had not been advanced in support of a motion for judgment at the close of all the evidence. *Id.*

\* \* \*

SMC filed its post-judgment motion in this case within 30 days after the entry of the jury verdicts, giving rise to the court's powers to set aside the judgments. Nonetheless, the Circuit Court, failing to exercise its broad discretion, allowed the judgments to stand, even though **those judgments reflected irreconcilably inconsistent jury verdicts. In this regard, the Circuit Court erred as a matter of law, and the judgment as to SMC must be set aside.**

Appellant's argument that the jury's verdict was irreconcilably inconsistent arises in the same procedural posture as in *Taha.* Thus, *Taha's* holding is controlling as to appellant's contention that the verdict was irreconcilably inconsistent; it follows that this contention was not waived by appellant's failure to present the contention in his motion for judgment.

We shall consider the merits of the inconsistency argument, *infra.*

■ Although *Taha* is not on all fours with appellant's alternative argument that punitive damages should not have been awarded because they were not pled in appellees' Amended Complaint, we glean from *Taha* that this argument was not waived by failure to make it at the motion for judgment stage; at that time, appellant could not have known that appellees would seek punitive damages for a cause of action for which punitive damages were not prayed.[11] Nevertheless, appellant learned of the matter before the case was submitted to the jury. Because appellant failed to raise the issue when the court instructed the jury and submitted the case, we conclude that appellant failed to preserve his insufficient pleading argument. We elaborate.

In this case, appellees' Amended Complaint contained a separate *ad damnum* clause for each of its four counts. Two counts (*i.e.*, malicious prosecution and loss of consortium), demanded punitive damages. But, the federal excessive force claim, on which the jury's punitive damage award was founded, did not. As to that claim, appellees only requested compensatory damages.

Appellant quotes *Scott v. Jenkins*, 345 Md. 21, 690 A.2d 1000 (1997), for the proposition that "in order to recover punitive damages in *any* tort action in the State of Maryland

---

11. In *Taha*, the issue of inconsistent jury verdicts, by its nature, could not have arisen until the case was submitted to the jury. In contrast, the Amended Complaint failed to plead punitive damages for excessive force from the moment it was filed, over a year before trial. Moreover, our review of the record indicates that neither the court nor any party mentioned punitive damages in connection with the excessive force claim until after the court had denied appellant's motion for judgment at the close of the case. Because appellant was not apprised by the suit, or otherwise, that he could face punitive damages on the excessive force claim, the rationale of *Taha* applies; appellant could not have argued against punitive damages in a motion for judgment because appellant was not yet aware that such damages were sought by appellees. *See Taha*, 378 Md. at 493, 836 A.2d 627 ("the issue . . . could not have been raised at that time").

... a *specific demand* for the recovery of punitive damages must be made before an award of such damages may be had." *Id.* at 29, 690 A.2d 1000 (appellant's emphasis). Appellant insists that "the award of punitive damages was not legally sustainable because of the defective pleading." He also relies on *Scott* for the principle that "[a] punitive damages award based on an insufficiently pleaded complaint may render the judgment constitutionally infirm." *Id.* at 35, 690 A.2d 1000.

*Scott* was a police use-of-force case. Jenkins, the plaintiff, filed a six-count complaint against Scott, a police officer, alleging several torts arising out of a "scuffle" between the two. *Id.* at 25–26, 690 A.2d 1000. For each count, Jenkins's complaint demanded $500,000 damages, costs, interest, and "such other and further relief as the court may deem just and proper." *Id.* at 26, 690 A.2d 1000. His complaint did not make a specific claim for punitive damages, however. *Id.* As the Court recounted, *id.*:

> Following the close of all evidence at trial, Jenkins requested the submission of a punitive damages instruction to the jury. Scott objected, pointing out that Jenkins failed to plead punitive damages in his original and Amended Complaints and that no mention of punitive damages was made during trial until the discussion of jury instructions with the trial judge. The court overruled Scott's objection, noting that Jenkins' claim of $500,000 damages, given the nature of the case, should have forewarned Scott that punitive damages were being sought.

The Court of Appeals reversed, stating, *id.* at 35–36, 690 A.2d 1000 (citation omitted):

> A claim that "may" support a punitive damages award, does not necessarily apprise the defendant of the true nature of the claim against him. This is especially so, when, as in the instant case, the pleading fails to expressly demand a judgment for "punitive damages." *A punitive damages award based upon an insufficiently pleaded complaint may render the judgment constitutionally infirm. See Travelers Indemnity Co. v. Nationwide Constr. Corp.,*

244 Md. 401, 410–11, 224 A.2d 285, 290 (1966) ("Where a judgment was outside the cause of action stated in the complaint and the defendant was not given a fair opportunity to defend against the claim on which the judgment was based, the judgment is invalid and subject to collateral attack.") (Emphasis added.)

The Court also quoted Md. Rule 2–305: " '[A] pleading that sets forth a claim for relief . . . *shall contain a clear statement of the facts necessary to constitute a cause of action **and** a demand for judgment for relief sought.* Relief in the alternative or of several different types may be demanded.' " *Scott,* 345 Md. at 36, 690 A.2d 1000 (italic and boldface emphasis in *Scott*). In addition, the Court quoted Niemeyer & Schuett's assessment of this Rule in their treatise, Maryland Rules Commentary:

"If the pleading seeks one type of relief only but has several counts or legal theories to support it, one demand for judgment at the end of the pleading is sufficient. **On the other hand, if the pleader seeks different types of relief based upon the nature of the legal theory alleged to support it, the claim for relief is included at the conclusion of each count of the pleading.**"

*Id.* (quoting PAUL V. NIEMEYER & LINDA M. SCHUETT, MARYLAND RULES COMMENTARY 169 (2d ed. 1992, 1995 Supp.) (emphasis added)).

In order to recover punitive damages, said the Court, "a specific claim for their recovery must be made." *Scott,* 345 Md. at 37, 690 A.2d 1000. Because Jenkins's pleadings did not specifically demand punitive damages, the Court concluded that "the trial court erred by submitting Jenkins' punitive damages instruction to the jury. . . . His prayer for damages and general relief were simply insufficient to inform Scott of the extraordinary nature of the additional relief sought against him." *Id.* at 38, 690 A.2d 1000.

In this case, as in *Scott,* the excessive force claim did not contain a demand for punitive damages. But, the issue was preserved in *Scott:* when the appellee requested a punitive

damage jury instruction, the appellant objected on the ground that punitive damages were not pled. *Id.* at 26, 690 A.2d 1000. Here, the court's jury instructions directly charged the jury to consider awarding punitive damages as to excessive force. The court stated: "You may only consider punitive damages if you find that the defendant is liable for the excessive force claim made under the United States Constitution." Moreover, the excessive force count was the *only* count on which the jury was instructed to consider punitive damages. Yet, appellant never objected to the instruction. Moreover, after counsel's closing arguments, the court explained the verdict sheet to the jury and said: "[F]inally, if you answer yes to question 4, keeping in mind that question 4 involves excessive force in violation of the United States Constitution, what amount of punitive damages, if any, do you find by clear and convincing evidence." Again, appellant raised no objection. Consequently, *Scott* cannot salvage appellant's argument.

The *Scott* Court relied, for its "constitutional infirmity" proposition, on *Travelers Indem. Co. v. Nationwide Constr. Corp.*, 244 Md. 401, 224 A.2d 285 (1966). In *Travelers*, the Court said: "Where a judgment was outside the cause of action stated in the complaint *and the defendant was not given a fair opportunity to defend against the claim on which the judgment was based,* the judgment is invalid and subject to collateral attack." *Id.* at 410–11, 224 A.2d 285 (emphasis added). In that case, a landlord filed suit against tenants for failure to pay rent. *Id.* at 405, 224 A.2d 285. The *ad damnum* clause of the complaint demanded repossession of the property, but did not include a demand for a money judgment. *Id.* At trial, the tenants failed to appear. *Id.* The trial court entered judgment in favor of the landlord for possession and also entered a money judgment in the landlord's favor for the amount of the unpaid rent, which the landlord then moved to enforce. *Id.*

On appeal, the Court assumed, without deciding, "that there was no prejudicial error in granting [landlord] the judgment of repossession for which it had prayed, even in the absence of [tenants] and their counsel; there had been prior notice of the

date of trial and [landlord] presented evidence in support of its demand for right of possession." *Id.* at 407, 224 A.2d 285. "But," the Court observed, "in its complaint, the claim of [landlord] was specifically limited to repossession of real property[.]" *Id.* And, "while the complaint contained an allegation that back rent had not been paid, no demand or claim was made for the payment of the sum involved, and the summons issued to [tenants] notified them only that the claim they were to defend was for repossession of the property." *Id.*

The Court concluded that the court's order constituted a denial of due process of law. *Id.* Although the landlord had the right to amend its pleading, the Court explained: "[T]he valid exercise of that right is dependent upon notice to the opposite parties and an opportunity for them to be heard on the issues raised by the amended pleadings. Here there was no such notice or opportunity." *Id.* at 409, 224 A.2d 285.

Those circumstances do not apply here. Appellant was served with appellees' Amended Complaint and went to trial on the merits. The record suggests that the parties participated in crafting the jury instructions. In any event, appellant and his counsel were present when the judge instructed the jury, and had every opportunity to object to the instruction as to punitive damages. Because appellant was accorded notice and an opportunity to be heard, *Travelers* does not apply. *See also In re Adoption No. 9979*, 323 Md. 39, 51–52, 591 A.2d 468 (1991) (citing *Travelers* and holding that: "concepts of due process [were] violated by the entry of an order directing repayment [of illegal compensation from adoptive parent] by the natural mother when she had been given no notice that such an order might be entered and no opportunity to contest it.")

We conclude that appellant's claim of insufficient pleading is not preserved. As we said in *Pulte Home Corp. v. Parex*, 174 Md.App. 681, 715, 923 A.2d 971, *aff'd*, 403 Md. 367, 942 A.2d 722 (2008): "It is well established ... that a defendant may waive any objection to a defect in pleading by failing to object to it." Indeed, "[i]n order to preserve ... conten-

tions concerning the law that should have governed the jury's deliberations, [a party is] required to note exceptions to the trial court's jury instructions." *Gittin v. Haught–Bingham,* 123 Md.App. 44, 49, 716 A.2d 1063 (1998). *See also, e.g., Cole v. Sullivan,* 110 Md.App. 79, 85–86, 676 A.2d 85 (1996); *Montgomery Ward & Co. v. McFarland,* 21 Md.App. 501, 516, 319 A.2d 824 (1974).

We turn to the merits of appellant's argument that the jury's award of punitive damages on the excessive force claim was irreconcilably inconsistent with its finding that appellant acted without malice. Appellant insists that this argument is not waived by failure to object, because his counsel "could have no way of knowing before the fact that the jury would award punitive damages along with its finding of 'no malice.'" In response, appellees rely on the court's waiver ruling.

To be sure, the court did not explicitly inform the jury that it could award punitive damages even in the absence of malice. This is not, however, a situation akin to *Taha,* in which the jury's inconsistent verdict was essentially a *non sequitur. See Taha,* 378 Md. at 472–73, 836 A.2d 627 (setting forth jury instructions that explained the principles of *respondeat superior* liability). In the case at bar, the possibility that the jury might render an allegedly inconsistent verdict was readily apparent from the court's instructions.[12]

When the judge defined "malice" for the jury, he noted that the definition was offered "[f]or the purposes of immunity" under State law. The trial court said: "[P]olice officers under the Maryland Constitution are entitled to qualified immunity under Maryland law, so under the Maryland Constitution, in order to find that a police officer used excessive force in the course of his duties, you must find that the officer acted with malice...." The judge explained to the jury that a finding of no malice would preclude a finding of appellant's liability with respect to appellees' claims under State law.

---

**12.** The jury instructions appear on pages 225 through 230, 957 A.2d at 1013-16, *supra.*

Although the judge instructed the jury that it could not consider punitive damages unless it found a violation of the federal Constitution, the court did not advise the jury that it had to find that appellant acted with malice before awarding punitive damages under federal law. To the contrary, the judge stated that malice was *not* required in order to find liability on the claim of excessive force, in violation of the federal Constitution. And, the court expressly stated that, if the jury found the use of excessive force, it was to consider punitive damages. When the judge explained the verdict sheet to the jury, he suggested that the jurors simply "follow the verdict sheet," step by step.[13] A timely objection from appellant, or request for clarification, could have avoided the complaint he advances here.

Nevertheless, *Taha* makes clear that an appellate court may not permit an irreconcilably inconsistent verdict to stand, even when no objection to the jury instructions was made.[14] The *Taha* Court relied upon our decision in *S & R Inc. v. Nails*, 85 Md.App. 570, 584 A.2d 722 (1991), *vacated on other grounds*, 334 Md. 398, 639 A.2d 660 (1994), which, like this case, involved a jury verdict that awarded punitive damages while finding that the defendant had not acted with actual malice. Quoting *Nails*, the *Taha* Court said:

"It is well settled that irreconcilably defective verdicts cannot stand. Where the answer to one of the questions in a special verdict form would require a verdict in favor of the plaintiff and an answer to another would require a verdict in favor of the defendant, the verdict is irreconcilably defective."

---

**13.** As indicated, the judge also gave instructions as to the verdict sheet. *See* pages 228–30, 957 A.2d at 1015–16, *supra*.

**14.** The *Taha* Court's holding only applies to jury verdicts in civil cases. The Court has since determined that an irreconcilably inconsistent jury verdict in a criminal case is impermissible. *See Price v. State*, 405 Md. 10, 18–29, 949 A.2d 619 (2008). Moreover, inconsistent verdicts by a trial judge in a nonjury trial are also impermissible. *Id.* at 19, 949 A.2d 619; *State v. Williams*, 397 Md. 172, 189–90, 916 A.2d 294 (2007).

*Taha,* 378 Md. at 488, 836 A.2d 627 (quoting *Nails,* 85 Md. App. at 590, 584 A.2d 722) (internal citations omitted).

Two dissenters in *Taha* argued that the employer-defendant, SMC, had waived any objection to the inconsistent verdict by failing to object contemporaneously. *See Taha,* 378 Md. at 497–501, 836 A.2d 627 (Raker, J., dissenting). Judge Raker, joined by Chief Judge Bell, contended, *id.* at 497–98, 836 A.2d 627 (footnotes omitted):

> Southern Management Corporation has waived any objection that the verdict is inconsistent. Southern Management never asked the trial court to have any purported inconsistency resubmitted to the jury for reconciliation. Southern Management never objected to the verdict or brought the inconsistency to the court's attention, even though permitted to do so, until well after the jury had been discharged. Southern Management agreed to the form of the verdict sheet and to the jury instructions. In fact, Southern Management drafted the verdict sheet that was submitted to the jury.... Had Southern Management objected to the instructions, or the verdict before the jury was dismissed, the trial court could have revised the instructions or had the verdict clarified.

The *Taha* majority explicitly rejected the dissent's reasoning, saying: "[A]llowing [the plaintiff] to prevail in this case based on the dissent's waiver argument would produce a result that is directly contrary to the law—a judgment in favor of [the plaintiff] based on woefully insufficient evidence and at odds with the jury's other legal conclusions." *Id.* at 492, 836 A.2d 627. Further, the Court stated: "In the absence of a rule requiring trial judges to resolve verdict inconsistencies prior to the release of the jury, the parties in Maryland courts should not be precluded from ... raising the issue of irreconcilably inconsistent verdicts by post-judgment motion." *Id.*

Thus, *Taha* compels us to determine whether the verdict here was irreconcilably inconsistent. Even in the absence of a contemporaneous objection, if the jury's verdict was irreconcil-

ably inconsistent, we would be required to reverse, despite what ordinarily would be a waiver of the issue.

We conclude that the verdict was not irreconcilably inconsistent. Moreover, appellant's argument is waived. We explain.

Appellant's argument on the merits is straightforward. Citing *Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992), he contends: "[P]unitive damages in Maryland are available only when there is clear and convincing evidence of *actual malice*. The verdict delivered by the jury in this case included a specific finding that Deputy French acted *without* malice in making the arrest of Ms. Hines, yet it awarded punitive damages." (Emphasis in original; internal citation omitted). "The finding of 'no malice' and the award of punitive damages," he argues, "renders the jury verdict as internally inconsistent. . . ."

■ Appellant is correct that, *as a matter of Maryland law*, punitive damages may only be awarded on the basis of "actual malice." In *Scott, supra,* 345 Md. at 29, 690 A.2d 1000, the Court stated:

> Lest there be any remaining doubt, in order to recover punitive damages in *any* tort action in the State of Maryland, facts sufficient to show *actual malice* must be pleaded and proven by clear and convincing evidence, and a specific demand for the recovery of punitive damages must be made before an award of such damages may be had. (Emphasis in original.)

*Owens–Illinois v. Zenobia*, 325 Md. at 460, 601 A.2d 633, abrogated a twenty-year span of precedent, beginning with *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 297 A.2d 721 (1972), in which Maryland courts had permitted recovery of punitive damages on the basis of both "implied malice" and "actual malice." In *Scott*, 345 Md. at 29 n. 3, 690 A.2d 1000, the Court explained the difference between "actual malice" and "implied malice":

> "Implied malice," as we use it here, means non-intentional conduct so reckless or wanton as to be "grossly negligent." This is to be distinguished from conduct motivated by ill

will, fraud, intent to injure, or other mens rea exhibiting an evil motive or purpose, or stated otherwise, "actual malice." The Court has also described an act committed with "actual malice" as an act "intentionally performed 'without legal justification or excuse, but with an evil or rancorous motive influenced by hate', the purpose being to deliberately and willfully injure the plaintiff." *Shoemaker v. Smith*, 353 Md. 143, 163, 725 A.2d 549 (1999) (citation omitted). *See Runnels v. Newell*, 179 Md.App. 168, 211, 944 A.2d 1183, *cert. granted*, 405 Md. 290, 950 A.2d 828 (2008); *Thacker v. City of Hyattsville*, 135 Md.App. 268, 300, 762 A.2d 172 (2000).

As the *Scott* Court recounted, *Smith*, 267 Md. 149, 297 A.2d 721, established an implied malice standard in auto negligence cases, and spawned "an explosion of punitive damages litigation . . . fueled in part by [judicial] opinions which, in effect, severed punitive damage awards from their historical rationales of punishment and deterrence." *Scott*, 345 Md. at 30, 690 A.2d 1000. In *Zenobia*, 325 Md. at 460 & n. 21, 601 A.2d 633, the Court returned punitive damage awards to an "actual malice" standard in negligence cases. It also required that the basis for a punitive damage award must be established by clear and convincing evidence. *Id.* at 469, 601 A.2d 633. Since *Zenobia*, the Court has "made it abundantly clear that 'with respect to both intentional and non-intentional torts, . . . an award of punitive damages must be based upon actual malice. . . .' " *Scott*, 345 Md. at 33, 690 A.2d 1000 (quoting *Montgomery Ward v. Wilson*, 339 Md. 701, 733, 664 A.2d 916 (1995)).

In its jury instructions, the court below defined "malice" in the context of immunity for violations of State law; the court instructed that appellant was entitled to qualified immunity for violations of State law if he acted without malice. *See* C.J. § 5–522(b). The court then defined the term "malice" according to the "actual malice" standard, as "bad intentions, evil motives, spite, hatred, or ill will; the purpose being to deliberately and willfully injure the plaintiff." Thus, when the jury determined that appellant acted without malice (Question 1), it was with respect to the issue of qualified immunity under

State law. And, it determined that French acted without "actual malice," as that term is defined in Maryland law. Having made that determination, the jury did not proceed to consider the excessive force claim under State law (Question 3). But, it proceeded to Question 4, concerning the federal excessive force claim.

We agree with appellant that, as a proposition of *Maryland law*, a jury verdict that finds that the alleged tortfeasor acted without actual malice is irreconcilably inconsistent with an award of punitive damages. That is the holding of, *e.g.*, *S & R Inc. v. Nails, supra*, 85 Md.App. 570, 584 A.2d 722. The problem with appellant's position is that the punitive damages in this case were not awarded under Maryland law. To the contrary, they were awarded pursuant to *federal law*, under § 1983 (Question 4).

Appellees' federal constitutional claim is founded on 42 U.S.C. § 1983, a provision of the Civil Rights Act of 1871 that establishes a federal cause of action to redress violations of federal rights committed by persons acting under color of state law. The provision states, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.... [15]

However, § 1983 does not, itself, create substantive rights. *See, e.g., Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Instead, it allows an injured person to sue for violations of rights established by other substantive federal law. *See, e.g.,* Steven H. Steinglass, Section 1983 Litigation in State Courts § 3:1

---

**15.** In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that the Fourth Amendment directly creates a similar, implied right of action against persons who violate federal rights under color of *federal* law.

(2007–2008 Supp.). While a § 1983 action may be brought to enforce violations of some kinds of federal statutes, *see Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), it is often used, as in this case, as a vehicle to litigate claims that a state agent has violated federal constitutional rights.[16]

█ The Supreme Court announced the punitive damage standard for § 1983 actions in *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Of significance here, it is not the same as Maryland's "actual malice" standard. In *Smith,* the Court held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, *or when it involves reckless or callous indifference to the federally protected rights of others." Id.* at 56, 103 S.Ct. 1625 (emphasis added).

Appellant concedes that this is the federal standard. But, he notes that "the Supreme Court has not directly addressed whether the same standards apply for awarding punitive damages under § 1983 *in state courts . . . .*" (Emphasis added.) He adds: "[T]he jury decided that John French acted *without* evil motive or intent. Consequently, under either federal or State law, it was inappropriate for the trial court to allow the award to stand."

It is true that the Supreme Court has not explicitly directed state courts to utilize the federal punitive damages standard when § 1983 claims are litigated in state courts. We are unaware of a reported Maryland decision that has squarely decided that specific question for this State. Maryland precedent is not entirely silent, however.

In *County Executive of Prince George's County v. Doe,* 291 Md. 676, 436 A.2d 459 (1981) (*"County Executive I "*), several

---

**16.** The Supreme Court held in *Thiboutot,* 448 U.S. at 3 n. 1, 100 S.Ct. 2502, and in *Martinez v. California,* 444 U.S. 277, 283–84 n. 7, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), that § 1983 claims may be brought in state courts. In *DeBleecker v. Montgomery County,* 292 Md. 498, 500, 438 A.2d 1348 (1982), the Court of Appeals recognized that § 1983 claims may be litigated in the courts of Maryland.

plaintiffs brought suit under § 1983, contending that the County Executive of Prince George's County violated the federal constitutional right to choose an abortion, recognized in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), when he issued an executive order prohibiting the performance of abortions at all county owned or operated hospitals except when necessary to save the life of the mother. 291 Md. at 678, 436 A.2d 459. On State law grounds, the plaintiffs also argued that the executive order violated the county charter. *Id.* The circuit court declared the executive order null and void, holding that the County Executive lacked authority under the county charter to issue the order. The Court affirmed. *Id.* at 685, 436 A.2d 459.

Thereafter, the plaintiffs obtained an award of attorney's fees, pursuant to 42 U.S.C. § 1988, which authorizes a prevailing party in an action under § 1983 or certain other federal statutes to receive an award of reasonable attorney's fees. *See County Executive of Prince George's County v. Doe,* 300 Md. 445, 451, 479 A.2d 352 (1984) (*"County Executive II"*). The county defendants appealed, "relying primarily upon Maryland's 'policy against awarding attorneys' fees to prevailing parties except in exceptional circumstances' [to] assert that a Maryland court should award an attorney's fee under § 1988 only when a plaintiff prevails on the § 1983 cause of action." *Id.* at 452, 479 A.2d 352. Alternatively, they argued that Maryland courts "need not apply the entire federal law in this regard." *Id.*

At the outset of its opinion in *County Executive II*, the Court rejected the latter proposition outright. It said: "It has long been settled that when an action is brought in a state court to enforce rights or claims under federal law, the Supremacy Clause of the United States Constitution requires that federal law and policy be applied by the state court." *Id.* at 454, 479 A.2d 352. The Court continued: "[A] state court exercising jurisdiction in a federal cause of action may not refuse to apply federal law in one particular respect where such law is deemed inconsistent with 'state policy.' Instead, the *entire* federal substantive law is applicable." *Id.* at 455,

479 A.2d 352 (emphasis in original). Quoting *Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 243 & 245, 63 S.Ct. 246, 87 L.Ed. 239 (1942), the Court concluded, 300 Md. at 455, 479 A.2d 352 (emphasis in original):

> [W]here a state court action is brought to enforce "asserted rights granted by federal law," the state court "is required to give to [the plaintiff] the *full benefit* of federal law." The "state court [is] bound to proceed in such a manner that *all* the substantial rights of the parties under controlling federal law would be protected."

The Court then applied *Maine v. Thiboutot, supra,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555, in which the Supreme Court rejected the argument that § 1988 did not apply in § 1983 actions brought in state courts, and said that the attorney's fee provision of § 1988 was a "part of the § 1983 remedy whether the action is brought in federal or state court." *Id.* at 11, 100 S.Ct. 2502. The *County Executive II* Court concluded, 300 Md. at 456, 479 A.2d 352: "If the § 1988 fee provision is part of the § 1983 remedy, as the Supreme Court held, it follows that the standards under § 1988 for determining when the fee should be awarded are likewise part of the § 1983 remedy."

■ Applying *County Executive II,* we cannot say that the availability of punitive damages under § 1983 is not a "part of the § 1983 remedy." It follows that Maryland courts ordinarily must apply federal standards in § 1983 actions with respect to punitive damages. The federal standard, which the Supreme Court has determined to be the intent of Congress, allows an award of punitive damages not only "when the defendant's conduct is shown to be motivated by evil motive or intent," *Smith v. Wade,* 461 U.S. at 56, 103 S.Ct. 1625, which accords with Maryland's actual malice standard, but also when the defendant's conduct "involves reckless or callous indifference to the federally protected rights of others," which is akin to implied malice. *Id.* Notwithstanding appellant's insistence to the contrary, the jury's finding that appellant did not act with "actual malice," i.e., "bad intentions, evil motives, spite, hatred, or ill will; the purpose being to deliberately and

willfully injure the plaintiff," does not operate as a finding that he did not act with implied malice, i.e., with "reckless or callous indifference to the federally protected rights" of Ms. Hines.

It is unfortunate that the court below was not asked to instruct the jury that, under the federal standard, there is a threshold requirement of either implied or actual malice with respect to the award of punitive damages. We do not know whether the jury would have awarded punitive damages if it had been expressly instructed, according to the federal standard, that punitive damages are only proper if appellant acted with "evil motive or intent" or "reckless or callous indifference to the federally protected rights of others." Nevertheless, any contention of error on that basis is not preserved. Moreover, the jury's verdict was not, as a matter of law, irreconcilably inconsistent, as appellant contends. We explain.

Under federal punitive damages law, in an action pursuant to § 1983, a jury may award punitive damages, even if it finds that the defendant did not act with actual malice, so long as the jury finds that the defendant acted with "reckless or callous indifference to the federally protected rights" of the plaintiff (akin to implied malice). Thus, the jury's finding that appellant did not act with actual malice would not have foreclosed a finding that he acted with implied malice. However, that question was not posed to the jury. The verdict was not inconsistent because an award of punitive damages is proper in a § 1983 action, even if the defendant acts without actual malice, so long as the defendant acts with reckless or callous disregard for the plaintiff's federal rights.

It follows that the jury's verdict was not one in which, in the words of the *Taha* Court, "the answer to one of the questions ... would require a verdict in favor of the plaintiff and an answer to another would require a verdict in favor of the defendant...." *Taha*, 378 Md. at 488, 836 A.2d 627. Put another way, there was no irreconcilable inconsistency when the jury answered "no" to whether appellant acted with actual malice, but answered "yes" to the award of punitive damages.

For an irreconcilable inconsistency to result, the jury would have had to answer "no" to whether appellant acted with implied malice; but the jury was never asked that question. Because the jury's verdict was not irreconcilably inconsistent, appellant's failure to object to the content of the instructions is fatal to his appellate claim; he failed to preserve his argument as to the deficiency of the instructions.[17]

## B.

Before turning to appellant's challenges to the jury's finding of liability, we pause to review the "law of the case" doctrine, which is relevant to appellant's remaining contentions. The Court of Appeals recently summarized the doctrine in *Reier v. State Dept. of Assessments and Taxation*, 397 Md. 2, 20–21, 915 A.2d 970 (2007) (boldface added):

> The "law of the case doctrine is one of appellate procedure." *Scott v. State*, 379 Md. 170, 183, 840 A.2d 715, 723 (2004) (quoting *Goldstein & Baron Chartered v. Chesley*, 375 Md. 244, 253, 825 A.2d 985, 990 (2003)). "Under the doctrine, once an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law of the case." *Id.* (citing *Turner v. Hous. Auth.*, 364 Md. 24, 32, 770 A.2d 671, 676 (2001)). The function of the doctrine is to prevent piecemeal litigation. *Fid.-Balt. Nat'l Bank & Trust Co. v. John Hancock Mut. Life Ins. Co.*, 217 Md. 367, 371–72, 142 A.2d 796, 798 (1958). Thus, litigants
>
> > cannot prosecute successive appeals in a case that raises the same questions that have been previously decided by this Court in a former appeal of that same case; **and, furthermore, they cannot, on the subsequent appeal of the same case raise any question that could have been presented in the previous appeal on the then state of**

---

17. We emphasize that the jury instructions did not conform to the law of punitive damages under § 1983, because the court did not advise the jury that it had to find either actual or implied malice. However, appellant never objected to the court's jury instructions on that basis.

**the record, as it existed in the court of original juris-diction.** If this were not so, any party to a suit could institute as many successive appeals as the fiction of his imagination could produce new reasons to assign as to why his side of the case should prevail, and the litigation would never terminate. Once this Court has ruled upon a question properly presented on an appeal, or, if the ruling be contrary to a question that could have been raised and argued in that appeal on the then state of the record, as aforesaid, such a ruling becomes the 'law of the case' and is binding on the litigants and the court alike, unless changed or modified after reargument, and neither the questions decided not [sic] the ones that could have been raised and decided are available to be raised in a subsequent appeal.

*Fid.-Balt. Nat'l Bank & Trust Co.,* 217 Md. at 372, 142 A.2d 796.

*See also Schisler v. State,* 177 Md.App. 731, 743–47, 938 A.2d 57 (2007); *Hawes v. Liberty Homes,* 100 Md.App. 222, 231, 640 A.2d 743, *cert. · denied,* 336 Md. 300, 648 A.2d 203 (1994).

Nevertheless, as we observed in *Corby v. McCarthy,* 154 Md.App. 446, 840 A.2d 188 (2003), "the doctrine is not 'an inflexible rule of law.' Rather, 'it is a judicial creation . . . .' " *Id.* at 479, 840 A.2d 188 (internal citations omitted). In *Goldstein & Baron, Chartered v. Chesley,* 375 Md. 244, 253, 825 A.2d 985 (2003), the Court explained: "[A]lthough an appellate decision certainly binds lower courts, the appellate court that rendered the decision is not precluded from reconsidering an issue it previously decided, even in the same case, when exceptional circumstances so warrant."

In *Corby,* 154 Md.App. at 479, 840 A.2d 188, we elaborated on the "exceptional circumstances" that might warrant an appellate court's departure from a prior decision, explaining that "[t]he Court of Appeals has carved out three exceptions to the general rule regarding law of the case . . . ." The three exceptions are: (1) when " 'the evidence on a subsequent trial was substantially different' "; (2) when a " 'controlling authori-

ty has since made a contrary decision on the law applicable to such issues' "; or (3) where " 'the decision was clearly erroneous and would work a manifest injustice.' " *Id.* at 479, 840 A.2d 188 (quoting *Turner v. Housing Auth.*, 364 Md. 24, 34, 770 A.2d 671 (2001)).

Appellant concedes that "the jury apparently believed the truth of Ms. Hines' claims that Deputy French pointed a gun at her head, pushed her face up against her truck and handcuffed her too tightly." But, he insists that, in light of "established case law," his actions were "simply not objectively unreasonable."

In denying the JNOV motion, the circuit court observed: "At the conclusion of Plaintiffs' case, Defendant failed to argue, as he now does, that an officer's drawing of his weapon is not an impermissible use of force under the Fourth Amendment." Because appellant had not raised this ground in his motion for judgment, the court ruled that it was waived for purposes of JNOV consideration.

Appellant asserts: "The trial court erred when it parsed out a single fact that may not have been specifically cited by counsel, when the focus of the argument more than established the *grounds* for the motion for judgment...." He suggests that Rule 2–532 "cannot possibly require a party to argue every single, specific piece of factual evidence at issue," and maintains that the court and appellees "misconstrue[ ] the requirement of Rule 2–532 to be fact-based rather than based on legal grounds." He characterizes his argument on the motion for judgment as an argument "essentially, that *no* action taken by Deputy French was so unreasonable as to constitute excessive force...."

French suggests that his argument is double-pronged. First, he contends that Hines was required to produce evidence of "significant physical injury" as "circumstantial evidence of excessive force[.]" In his view, appellees "produced so little evidence of physical injury in this case," and the "absence of significant physical injury indicates that the force used was reasonable and thus not unconstitutional." There-

fore, he maintains that the jury's verdict is "legally defective and must be vacated." Second, appellant argues that, as a matter of law, a police officer's use of handcuffs or display of a weapon at an arrestee does not constitute unreasonable force. In his view, pointing a weapon is merely a "show of potential force." Even if it were a use of force, however, appellant contends that it was objectively reasonable under the circumstances, stating: "As [appellant] approached [Ms. Hines's] vehicle, he saw her reach for something inside her vehicle, a fact she did not dispute." Moreover, French argues that "a claim that handcuffs were too tight is simply not actionable under the fourth amendment."

As we see it, appellant has actually made three claims: (1) that, as a matter of law, a claim of excessive force cannot succeed without a showing of substantial physical injury, which he contends appellees did not make; (2) that, *as a matter of law,* an officer's pointing of his weapon or application of handcuffs to an arrestee can *never* suffice to present a claim of excessive force; and (3) that, *on the facts of this case,* viewed in the light most favorable to appellees, appellant's pointing of his weapon and use of handcuffs was reasonable *under the circumstances,* and therefore not excessive. These are distinct legal arguments. It is the second argument for which the circuit court found a waiver.

 In our review of the record, we detect no error in the circuit court's waiver ruling. To be sure, *appellees'* counsel mentioned that appellant "pulled his pistol and pointed it at [Ms. Hines]," and the court commented, after counsel's argument, that "there was also some testimony, too, that is significant, that she disappeared after she pulled over, she sort of disappeared out of sight when she reached over to get her purse, and when she gets up, there's an officer with a drawn gun." *Cf. Jones v. Jones,* 172 Md.App. 429, 440, 915 A.2d 471, *cert. denied,* 399 Md. 593, 925 A.2d 633 (2007) (reasoning, in response to JNOV waiver argument, that "the issue was raised by counsel for [the non-moving party]," and "[o]nce the issue was raised ... there is no reason why [the moving

party] would think it had to be re-raised . . . ."). Each comment, however, was plainly directed at whether appellant's drawing of his weapon was reasonable *under the circumstances*, not whether pointing a weapon at an arrestee could ever constitute excessive force.[18] That argument was never raised on the motion for judgment, and thus the court appropriately declined to consider it with respect to the motion for JNOV.

In contrast, appellant's counsel made a statement implicating the argument that tightening of handcuffs can never support a claim of excessive force. She said: "[T]his is a case that says that the application of handcuffs, even if they're too tight, is not a constitutional violation, and, frankly, in this case we have insufficient evidence of physical injury attached to the alleged constitutional violation." Therefore, we shall consider appellant's argument in this respect, along with his argument concerning substantial physical injury.

Having dispensed with the waiver issue (and, in the process, whittled appellant's arguments back to two), we proceed to the substance of appellant's contentions regarding the law of excessive force. We pause to review the law pertaining to claims of excessive force, in violation of the Fourth Amendment.

Claims against police officers alleging the use of unconstitutionally excessive force in effecting an arrest are evaluated under a "reasonableness" standard, enunciated by the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In *Graham*, the Supreme

---

**18.** Appellant's interpretation of the court's comments as a "tacit[ ] acknowledg[ment] that Deputy French's display of his weapon was reasonable under the circumstances" seems to us a wishful one. The court plainly stated that the reasonableness of appellant's actions, including the display of his weapon, was a question for the jury. The court said that the putative threat to appellant's safety represented by Ms. Hines's "disappear[ance] out of sight when she reached over to get her purse," which allegedly prompted appellant to draw his weapon, was "significant, but that, in and by itself, would not be sufficient to take it away from them on the motion, but it is a significant argument."

Court determined the analysis to be applied to a claim brought under § 1983 alleging that a law enforcement officer used unconstitutionally excessive force in the course of an arrest or investigative stop. The plaintiff in that case, who had diabetes, sustained a broken foot and other injuries after police officers mistook the effects of his insulin reaction for suspicious or drunken behavior. The officers forcibly arrested him, handcuffed him, "shoved his face down against the hood of [a] car," and then "grabbed [him] and threw him headfirst into [a] police car." *Id.* at 388–90, 109 S.Ct. 1865. The Court granted certiorari to review the grant of a directed verdict for the police officers. *Id.* at 392, 109 S.Ct. 1865.

In affirming the trial court, the Fourth Circuit had applied a four-factor test: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; (3) the extent of the injury; and (4) '[w]hether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* at 390–91, 109 S.Ct. 1865 (internal citation omitted).[19]

The Supreme Court in *Graham* rejected the notion "that all excessive force claims brought under § 1983 are governed by a single generic standard." 490 U.S. at 393, 109 S.Ct. 1865. It said, *id.* at 394, 109 S.Ct. 1865:

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force.... The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard.

---

**19.** This test was originally developed in *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973), in which the court analyzed an arrestee's claim of unconstitutionally excessive force under substantive due process standards grounded in the Fourteenth Amendment. *Graham*, 490 U.S. at 392–93, 109 S.Ct. 1865.

"Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen," the Court reasoned, "it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Id.*[20] The Court ruled, *id.* at 395, 109 S.Ct. 1865:

Today we . . . hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

Expounding upon the test it adopted, the Supreme Court said, *id.* at 396–97, 109 S.Ct. 1865 (internal citations omitted):

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

---

**20.** The Court noted that the Eighth Amendment's ban on cruel and unusual punishment would be the source of protection against excessive force after conviction, and that, between arrest and conviction, the Due Process Clause protects pretrial detainees from the use of excessive force that amounts to punishment. *Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. 1865.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

 Our analysis in *Hines I* quoted extensively from *Graham*. *See Hines I*, 157 Md.App. at 574–75, 852 A.2d 1047. Indeed, the *Graham* standard is applied consistently in Maryland courts. *See, e.g., Richardson v. McGriff*, 361 Md. 437, 485–86, 762 A.2d 48 (2000); *Shoemaker v. Smith*, 353 Md. 143, 160–61, 725 A.2d 549 (1999). The *Graham* Court did not articulate a "substantial injury" component to its test. As we have seen, the Supreme Court explicitly rejected the standard applied by a lower appellate court, drawn from *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973), which incorporated "the extent of the injury" as a factor in determining whether a constitutional violation had occurred. *See Graham*, 490 U.S. at 392–93, 109 S.Ct. 1865. No Maryland case has ever required that a party demonstrate proof of a "substantial injury" in order to proceed with a claim of unconstitutionally excessive force.[21]

---

21. In support of his argument, appellant relies on cases from various federal courts, several of them unpublished and some predating *Graham*. As the Court explained in *Gayety Books, Inc. v. City of Baltimore,*

Moreover, application of the cases from lower federal courts, cited by appellant, would be inconsistent with the law of the case. We applied the *Graham* "reasonableness" test in *Hines I* and determined that appellant's allegations stated a claim of excessive force. There is no basis for this Court to depart from the determination of the *Hines I* Court, given that Ms. Hines's testimony was fully consistent with the allegations we reviewed in *Hines I*. As to those allegations, we said:

> In the case *sub judice*, appellants have provided sufficient support for the assertion that Deputy French used unreasonable force. . . . Viewing the alleged facts in a light most favorable to appellants, *a jury could conclude that Deputy French used excessive force* when he pointed his gun at appellant, "grabbed her and threw her up against the side of her truck," and "slamm[ed] her head into the side of the truck."

*Hines I*, 157 Md.App. at 578, 852 A.2d 1047 (emphasis added).

This conclusion resolves both remaining prongs of appellant's argument. We determined that appellees' allegations stated a claim of excessive force, and at trial a jury credited those allegations. Our conclusion in *Hines I* was consistent with Maryland's interpretation of federal law on excessive use of force; as noted, there is no controlling precedent endorsing

---

279 Md. 206, 212–13, 369 A.2d 581 (1977) (internal citations omitted): "[T]he decisions of the Supreme Court of the United States construing the federal constitution and acts of Congress pursuant thereto are conclusive. The courts of this State, however, are not bound by the holdings of a federal district court or of a federal court of appeals." To be sure, we may consider persuasive the opinions of federal courts (as the Court did in *Gayety*). But, Maryland courts are not obligated to follow the decisions of the lower federal courts, even as to questions of federal law. *Cf. District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206(1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). *Accord United States ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1076 (7th Cir.1970) ("[B]ecause lower federal courts exercise no appellate jurisdiction over state tribunals, decisions of lower federal courts are not conclusive on state courts."), *cert. denied*, 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971).

the "substantial injury" requirement that appellant seeks to impose. Because the issue has already been decided, we decline to revisit our earlier determination.

## C.

Appellant's alternate attack on the jury's excessive force verdict is, as the circuit court noted, one that he has amply preserved. He contends that the jury's finding of liability for excessive force conflicts with our ruling in *Hines I*, in which we said that the circuit court properly granted summary judgment in favor of appellant on Ms. Hines's claim of battery. Appellant reasons (emphasis in original):

> The law recognizes that police officers must commit a "technical" battery in order to make an arrest. *Hines I*, 157 Md.App. at 551, 852 A.2d 1047 (citing *Ashton v. Brown*, 339 Md. 70, 119–21, 660 A.2d 447 (1995)). The privilege is lost, however, when an officer uses unnecessary force or exercises gratuitous violence for improper reasons. *See, e.g., Sawyer v. Humphries*, 322 Md. 247, 587 A.2d 467 (1991).

> In the prior appeal, this Court ruled that Ms. Hines did *not* have a viable claim for battery because [appellant] had probable cause to arrest her, and that he was entitled to judgment as a matter of law concerning the claims for battery, false imprisonment and false arrest. 157 Md.App. at 553, 852 A.2d 1047. Implicit in this ruling is that Deputy French did not apply more force than was appropriate to make the arrest.

> In this case there was no "excessive force claim" in the original Complaint; it did allege battery, a count that has been dismissed because the alleged battery was privileged. 157 Md.App. at 551–52, 852 A.2d 1047. If Deputy French did not even commit a battery, he cannot have acted with unreasonable force and cannot be held liable for a constitutional violation; the verdict is inconsistent with the law of the case.

Appellant's invocation of the "law of the case" in this instance is inapt. We specifically stated in *Hines I* that appellees had alleged facts that could support a claim of excessive use of force. That determination, and not our determination as to battery, is the law of the case with respect to appellees' Fourth Amendment claim.

As to battery, our decision in *Hines I* was predicated on the proposition that "battery 'can only occur when there is no legal authority or justification for the arresting officer's actions.'" *Hines I,* 157 Md.App. at 551, 852 A.2d 1047 (citation omitted). We considered appellees' battery claim to be "analytically dependent upon the cause of action for false imprisonment," explaining that "if the arrest was not a false imprisonment, then the physical force used to effectuate the arrest is not tortious. Therefore, the legal justification for an arrest indirectly controls whether an assault or battery has occurred." *Id.* at 551 n. 4, 852 A.2d 1047 (citations omitted). The *Hines I* Court determined that the dispatch report that appellant received, which misidentified Ms. Hines's vehicle as being involved in a hit-and-run, gave appellant probable cause to arrest Ms. Hines. *Id.* at 552, 852 A.2d 1047. Accordingly, in the view of the *Hines I* Court, appellees' battery count failed, because appellant's arrest of Ms. Hines was legally justified. *Id.*

The *Hines I* Court did not address the point that appellant now raises, which is that the privilege that a law enforcement officer possesses to commit a battery in the course of a legally justified arrest extends only to the use of reasonable force, not excessive force. To the extent that the officer uses excessive force in effectuating an arrest, the privilege is lost. This principle is articulated in the *Corpus Juris Secundum,* which states:

The use of *reasonable* force to effectuate an arrest defeats a battery or an assault claim. In other words, contact incident to an arrest cannot form the basis of a claim for battery. Indeed, officers are privileged to commit a battery pursuant to a lawful arrest, *subject to the excessive force*

*limitation* .... If an officer uses excessive force, or force greater than is reasonably necessary under the circumstances, the officer may be liable. *In other words, an officer's nonprivileged use of force constitutes battery.*

Sonja Larsen & Thomas Muskus, 6A C.J.S. *Assault* § 35 (2008 Supp.) (emphasis added; footnotes omitted).

As noted above, despite our earlier resolution of the battery claim in appellant's favor, we also determined in *Hines I* that, in effect, appellees stated a claim of excessive force. We suggested that, on remand, appellees amend their complaint to separately delineate such a claim. Appellant cannot use the "law of the case" doctrine to bootstrap our conclusion as to the battery issue into a conclusion on excessive force that directly conflicts with our resolution as to the viability of the constitutional claim.

We recognize the arguable inconsistency in *Hines I* that appellant seeks to exploit. To the extent that appellant used excessive force in his arrest of Ms. Hines, his privilege to commit a battery of Ms. Hines was lost. Thus, our affirmance of summary judgment in favor of appellant on the battery claim may have been in error. *See Randall v. Peaco,* 175 Md.App. 320, 332, 927 A.2d 83 (2007) ("[T]he principle of reasonableness announced in *Graham* 'is the appropriate one to apply' to excessive force claims brought under Article 26 *and for common law claims of battery*" in an excessive force suit.) (Emphasis added); *see also Richardson v. McGriff,* 361 Md. 437, 452–53, 762 A.2d 48 (2000); *Ashton v. Brown,* 339 Md. 70, 119 n. 24, 660 A.2d 447 (1995) ("If the [plaintiffs'] arrests themselves were not tortious, neither was the physical force used to effectuate them [where] *[t]he plaintiffs have not asserted a cause of action based on alleged excessive force in making lawful arrests.*") (Emphasis added); *Williams v. Prince George's County,* 112 Md.App. 526, 554, 685 A.2d 884 (1996) ("[B]attery *(when the force used is not excessive)* can only occur when there is no legal authority or justification for the arresting officer's actions.") (Emphasis added).

Notwithstanding our affirmance of summary judgment as to battery in *Hines I*, our determination as to excessive force in the earlier appeal makes plain that appellant sufficiently alleged facts to support a claim of excessive use of force. Appellant's attempt to circumvent that determination fails.

### D.

Appellant cites *Edmonds v. Murphy*, 83 Md.App. 133, 573 A.2d 853 (1990), for the proposition that an action for loss of consortium is comprised of two elements: (1) injury to the marital relationship, which is (2) caused by the wrongful conduct of the defendant. In light of his argument that the verdict on excessive force must be reversed, he argues that there was no wrongful conduct, and therefore there can be no recovery for loss of consortium.

In its Memorandum Opinion addressing appellant's motion for JNOV, the circuit court ruled that appellant waived this argument by failing to argue it in the motion for judgment. We need not determine whether the circuit court's decision as to waiver was correct, because appellant's claim fails on the merits. Because we reject appellant's contentions that the verdict on excessive force must be set aside, we also reject his contention that the damages for loss of consortium must be set aside.

### E.

The parties were unable to agree on the contents of the record extract. Each side filed a separate appendix, and the parties now request that we resolve the dispute by adjusting the award of costs. *See* Md. Rules 8–501(d)–(f) & 8–607.

On July 6, 2006, counsel for appellees wrote to appellant's counsel, requesting the inclusion of virtually the entire contents of the record, dating back to the inception of the suit. Appellant's counsel responded on July 17, 2006, proposing a record extract containing specific documents relevant to the issues on appeal. In light of the issues we have reviewed, the record extract proposed in appellant's letter of July 17, 2006,

would have provided the Court with nearly every portion of the record relevant to our decision, without inclusion of irrelevant material. Appellees' counsel continued to insist, over the course of a year, on reproduction of the entire record, refusing further attempts by appellant's counsel at compromise, refusing to identify specific portions of the record for inclusion, and declining to answer appellant's counsel's repeated queries as to the purpose served by the inclusion of seemingly irrelevant material.

Thereafter, when appellees filed their Brief and Appendix, the appendix did not contain material that they originally requested. In fact, it consisted only of piecemeal fragments of the trial transcript, largely irrelevant to the issues on appeal, and impractical to read due to the need to flip back and forth between appendices. The dispute has resulted in nothing but wasted paper, as the fragmented state of the appendices has required us to resort to use of the transcripts themselves.

Based on the foregoing, we shall assign a portion of the costs to appellees, despite our affirmance. *See, e.g., LaForce v. Bucklin,* 260 Md. 692, 273 A.2d 144 (1971).

**JUDGMENT AFFIRMED. APPELLANT TO PAY 50% OF THE COSTS; APPELLEES TO PAY 50% OF THE COSTS.**