Howard County Circuit Court
13-C-09-077527

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2917

September Term, 2009

_____

DEBORAH LAVINE, et al.

v.

AMERICAN AIRLINES, INC.

_____

Graeff,
Hotten*,
Kenney, James A., III,
  (Senior Judge, Specially Assigned),

_____

JJ.

_____

Opinion by Kenney, J.

_____

Filed: July 28, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

*Justice Hotten initially served on the Panel in this appeal while a judge of this Court. This appeal was stayed for several years pending bankruptcy proceedings filed by the appellee. While this appeal was stayed, Justice Hotten was elevated to the Supreme Court of Maryland, where she served until her retirement on April 21, 2024. On January 23, 2024, Chief Justice Fader designated Justice Hotten to sit, by special assignment, as a judge with the Appellate Court of Maryland, beginning April 21, 2024. Justice Hotten rejoins this Panel under that January 23, 2024, authorization.

Appellants Deborah and Matt Lavine appeal the grant of summary judgment by the Circuit Court for Howard County in favor of appellee, American Airlines, Inc. ("American"). They present four questions[1] which we have consolidated and reordered as follows:

> (1) Did the circuit court grant summary judgment despite the existence of genuine disputes of material fact?
>
> (2) Was appellee entitled to judgment as a matter of law?

For the reasons that follow, we answer question 1 in the negative and question 2 in the affirmative. We shall therefore affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On September 26, 2008, appellants purchased two round-trip airline tickets from American's website. Each ticket included two flights on the outbound leg: flights 1219 and

---

[1] As presented in appellants' brief, the questions are:

> (1) Did the lower court apply the wrong standard in reviewing a motion for summary judgment?
>
> (2) Did the misrepresentations by American Airlines constitute actionable elements?
>
> (3) Did the allegations of loss and injury identify damages sufficient to defeat a motion for summary judgment?
>
> (4) Does Federal law preempt Maryland from affording relief to customers of airlines?

[2] We do not include alleged facts that were not included in the pleadings or affidavits before the circuit court at the time summary judgment was granted, but were alleged for the first time in either appellants' brief or the amended complaint (which the circuit court excluded). *See Educ. Testing Serv. v. Hildebrant*, 399 Md. 128, 140 (2007).

4941. Flight 1219 was from Reagan National Airport to Miami International Airport on December 21, 2008, with an estimated arrival time of 7:55 p.m. Flight 4941 was from Miami International Airport to Key West International Airport on December 21, 2008, with a departure time of 8:35 p.m. Thus, there was to be a 40 minute window between flights if flight 1219 arrived as scheduled and flight 4941 left as scheduled. Appellants had booked a hotel room in Key West for the night of December 21, 2008.

After buying the tickets, appellants received an email, the subject line of which reads: "E-Ticket Confirmation." The headline is: "Itinerary & Receipt Confirmation." A line at the bottom states: "A summary of Terms and Conditions of travel is available by selecting the Conditions of Carriage button below." As shown in the email, this button is conspicuous. The referenced Conditions of Carriage clearly state that the ticket and the Conditions of Carriage "constitute the contract[.]" In the affidavit attached to his motion in opposition to summary judgment, appellant Matt Lavine, in reference to the Conditions of Carriage, stated that "I did not see or receive a document that looks like the" Conditions of Carriage.[3]

On December 21, 2008, after appellants arrived at Reagan National Airport for flight 1219, they were informed that the flight was delayed. Concerned that this delay would cause them to miss their connecting flight, appellants assert that they requested a

---

[3] Appellee acknowledged at oral argument that a buyer is not explicitly presented with the Conditions of Carriage at purchase, but, according to the affidavit of Dale Norgard ("Norgard's affidavit"), an employee of appellee, submitted in support of the motion for summary judgment, "[t]he Conditions of Carriage may be viewed at any time prior and subsequent to the ticket purchase on [appellee's] website."

refund or seats on another flight. "[Appellee] then represented that, despite the delay, [it] would provide [appellants] with the connecting flight from Miami to Key West . . . Based on [appellee's] representation, [appellants] agreed to board the delayed flight."

When flight 1219 arrived at Miami International Airport at 8:23 p.m., "[appellee] instructed [appellants] that they had fifteen minutes to traverse the airport to arrive at the departure point" for flight 4941. "[Appellants] ran through the airport. Construction was ongoing, and [appellants] inhaled debris." "Coughing," appellants arrived at the gate at 8:30 p.m., but were denied entry to flight 4941 because they did not arrive thirty minutes prior to the scheduled flight time. Appellants were also allegedly told that "the flight from Miami had departed prior to [appellants'] arrival at the departure point at the Miami Airport," but, "[i]n fact, the flight from Miami to Key West did not move for an hour past the time that [appellant] arrived."[4]

"[Appellee] provided [appellants] with no substitute flight" that night, and "[appellants] purchased a hotel room in Miami. [They] were unable to use the hotel room purchased in Key West." Appellee secured and paid for another hotel room for appellants, and provided them with a stipend for dinner and breakfast. On December 22, 2008, appellants boarded flight 4833 from Miami and arrived in Key West later that day.

On May 11, 2009, appellants filed a five count complaint in the Circuit Court for Howard County for: (1) Negligent Misrepresentation–Booking, (2) Intentional Misrepresentation–Booking, (3) Negligent Misrepresentation–Airport Departure, (4)

---

[4] Appellants apparently arrived five minutes before the scheduled flight time.

Intentional Misrepresentation – Airport Departure, and (5) Intentional Misrepresentation–Miami International Airport Departure. Counts (1) and (2) were based on appellee's alleged misrepresentation "that it could transport [appellants] from Washington, DC to Key West within the time identified."[5] Counts (3) and (4) were based on appellee's alleged misrepresentation "that its delay would not prevent the [appellants] from connecting from Miami to Key West." Count (5) was based on appellee's alleged misrepresentation "that the flight from Miami had departed prior to [appellants'] arrival at the departure point at the Miami Airport." The complaint sought $10,000 in compensatory damages and $10,000 in punitive damages for each plaintiff.

On September 21, 2009, appellee filed a Motion for Summary Judgment, stating that "[t]here is no dispute of material fact and [appellee] is entitled to judgment as a matter of law." The court, at a hearing on November 24, 2009, granted the motion from the bench.

On December 4, 2009, appellants filed, among other motions, a Motion for Leave to Amend, which, under Maryland Rule 2-534,[6] stayed the time for filing a notice of appeal

---

[5] Appellants have presented these as tort claims. At the hearing on the motion for summary judgment, appellants stated that "what was plead was either a tort arising out of a contract or a contract arising out of a tort."

[6] "In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment." Rule 2-534.

until the court ruled on the motions. The circuit court denied the motions on January 26, 2010, and on February 22, 2010, appellants noted the instant appeal.[7]

## DISCUSSION

### Standard of Review

We review "a [circuit] court's grant of a motion for summary judgment *de novo*." *Remsburg v. Montgomery*, 376 Md. 568, 579 (2003). In doing so, we consider "the same material from the record and decid[e] the same legal issues as the circuit court." *Lopata v. Miller*, 122 Md. App. 76, 83 (1998). "The review of the grant of summary judgment . . . involves the determination of whether a dispute of material fact indeed exists, and whether the [circuit] court was legally correct." *Lombardi v. Montgomery County*, 108 Md. App. 695, 710 (1996) (internal quotation marks and citations omitted).

Under Maryland Rule 2-501(f), a circuit court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact *and* that the party in whose favor judgment is entered is entitled to judgment as a matter of law." (Emphasis added). "[W]e construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party." *Remsburg*, 376 Md. at 579-80. To defeat a motion for summary judgment, "the party opposing the motion must produce some evidence demonstrating that the parties *genuinely* dispute a *material* fact." *Wankel v. A&B*

---

[7] According to appellee's brief, appellants "do not appeal the Court's January 26, 2010 Orders denying [appellants'] Motion for Leave to Amend and Maryland Rules 2-534 and 2- 535 Motions."

6

*Contractors, Inc.*, 127 Md. App. 128, 156 (1999) (emphasis added). The "[m]ere existence of some alleged factual dispute between the partes will not defeat an otherwise properly supported motion for summary judgment . . . ." *Pittman v. Atlantic Realty Co.*, 127 Md. App. 255, 270 (1999). The party opposing the motion cannot simply make a "bald statement that material facts [are] in dispute." *Tri-State Properties, Inc. v. Middleman*, 238 Md. 41, 47 (1965). It must instead present facts that are detailed and admissible in evidence. *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737-38 (1993). "The moving party is not entitled to judgment as a matter of law when reasonable inferences deducible from the facts are sufficient to permit the trier of fact to arrive at more than one [legal] conclusion." *Tucker v. Univ. Specialty Hosp.*, 166 Md. App. 50, 63-64 (2005).

In granting summary judgment in this case, the circuit court reasoned that (1) the Conditions of Carriage precluded appellee's liability for delays and/or missed connections, (2) appellants "have not provided any specific facts or shown that they suffered any damage as a natural and proximate consequence of [appellee's] actions," and (3) the Airline Deregulation Act, 49 U.S.C. § 40101 *et seq*. (the "ADA"), preempts the enforcement of Maryland tort law in this context. Because, ordinarily, we affirm a grant of summary judgment only on the grounds stated by the circuit court, we will address each stated reason in turn.

### Conditions of Carriage – Dispute of Material Fact

In regard to the Conditions of Carriage, appellants contend that the circuit court granted summary judgment despite the existence of genuine disputes of material fact. More

7

specifically, they submit that they neither saw nor agreed to the Conditions of Carriage, a document the significance of which is readily apparent. By their assertion, appellants are essentially arguing that the Conditions of Carriage are not part of the contract of carriage.

Section 41707 of the ADA provides that, "[t]o the extent the Secretary of Transportation prescribes by regulation, an air carrier may incorporate by reference in a ticket or written instrument any term of the contract for providing interstate air transportation." By regulation, "[a] ticket or other written instrument that embodies the contract of carriage may incorporate contract terms by reference (i.e., without stating their full text), and if it does so shall contain or be accompanied by notice to the passenger . . . ." 14 CFR 253.4(a). The ticket or written instrument must include a "conspicuous notice" that "[a]ny terms incorporated by reference are part of the contract . . . ." *Id* at 253.5(a). The incorporated terms may include information regarding the "[r]ights of the carrier and limitations concerning delay or failure to perform service, including schedule changes, substitution of alternate air carrier or aircraft, and rerouting." *Id*. at 253.5(b)(5).

In our view, the ADA and regulations authorized by it permit appellee to incorporate by reference the Conditions of Carriage to the "E-Ticket Confirmation" email[8] and–more importantly–they are part of the contract between appellants and American. Therefore,

_____

[8] At oral argument, appellants asserted that "there is no ticket," while appellee responded that "this [email] is their ticket for travel." We are persuaded that the email or "E- Ticket" functions as the "ticket or other written instrument" for the purposes of 14 CFR 253.

appellants' assertion that they did not see or receive the Conditions of Carriage before or after the purchase of the ticket does not create a *genuine* dispute of *material* fact.

Appellants also contend that even if the Conditions of Carriage are part of the contract, an agent of American orally modified these conditions at the airport, thereby creating a genuine dispute regarding the applicability of the Conditions of Carriage. Appellants ignore the non-modification clause in the Conditions of Carriage that states: "[n]o agent, employee or representative of American has authority to alter, modify or waive any provision of the Conditions of Carriage unless authorized in writing by a corporate officer of American." Even assuming that an agent's statement could be considered an oral modification of the Conditions of Carriage, such a modification would be void under the non-modification clause in the absence of an appropriate authorization. No such authorization is alleged.

Finally, appellants contend that the circuit court entered summary judgment despite a dispute of fact as to which party paid for the Miami hotel room. The Conditions of Carriage state that if a "delay or cancellation was caused by events within our control and we do not get you to your final destination on the expected arrival day, we will provide reasonable overnight accommodations, subject to availability." "The party opposing a motion for summary judgment must produce admissible evidence to show a genuine dispute of material fact," and offer more than "'conclusory statements, conjecture, or speculation" to defeat summary judgment. *Carter v. Aramark Sports & Entm't Servs.*, 153 Md. App. 210, 225 (2003) (citations omitted). Norgard's affidavit states that appellee

"secured and paid for a hotel room for [appellants] and provided them with a stipend for dinner and breakfast." Appellants allege in the complaint that they paid for their own hotel room in Miami, but, during the summary judgment proceeding, they did not contest that appellee had arranged and paid for a hotel room for them.[9] Thus, we do not believe that appellants generated a genuine dispute of material fact that appellee did not pay for a hotel room for them in Miami.

## Negligent and Intentional Misrepresentation – Judgment as a Matter of Law

The elements of negligent misrepresentation are:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) the defendant intends that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the statement; and

(5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Griesi v. Atlantic Gen. Hosp. Corp.*, 360 Md. 1, 11 (2000) (quoting *Weisman v. Connors*, 312 Md. 428, 444 (1988)). These elements are satisfied when "one relies on statements of another, negligently volunteering an erroneous opinion, intending that it be acted upon, and knowing that loss or injury are likely to follow if it is acted upon." *Walpert, Smullian &*

---

[9] The amended complaint, which was excluded by the circuit court, is included in the record extract. It states that appellants "purchased a hotel room in Miami, because [appellee] offered unsatisfactory accommodations."

*Blumenthal, P.A. v. Katz*, 361 Md. 645, 656 (2000) (quoting *Virginia Dare Stores, Inc. v. Schuman*, 175 Md. 287, 292 (1938)).

The elements of intentional misrepresentation are:

(1) that a representation made by a party was false . . .

(2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him . . .

(3) that the misrepresentation was made for the purpose of defrauding some other person . . .

(4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and . . .

(5) that that person suffered damage directly resulting from the misrepresentation.

*B.N. v. K.K.*, 312 Md. 135, 149 (1988) (quoting *Suburban Mgmt. v. Johnson*, 236 Md. 455, 460 (1964)). "One who by a fraudulent misrepresentation or nondisclosure of a fact that it is his duty to disclose causes physical harm to the person of another who justifiably relies upon the misrepresentation, is subject to liability to the other" for intentional misrepresentation. *Id*. at 150 (quoting RESTATEMENT (SECOND) OF TORTS § 557A (1977)).

In their brief, appellants assert that the circuit court "ignored the misrepresentations by [appellees] . . . that induced the[m] to board the flight from Reagan National Airport to Miami;" "ignore[d] the[ir] claims for damages;" and "misunderstood the concept of

11

damages," indicating that appellants "need only establish that they suffered damages as a result of the statements of [appellee]."

Appellants advance their argument notwithstanding the limitation of liability clause in the Conditions of Carriage ("American is not responsible for or liable for failure to make connections, or to operate any flight according to schedule, or for a change to the schedule of any flight. Under no circumstances shall American be liable for any special, incidental or consequential damages arising from the foregoing.").[10] In the context of this case, this language would justify the circuit court's grant of summary judgment.[11]

---

[10] We have routinely upheld the validity of limitation of liability clauses. *See, e.g., Winterstein v. Wilcom*, 16 Md. App. 130, 135 (1972) ("In the absence of legislation to the contrary, the law, by the great weight of authority, is that there is ordinarily no public policy which prevents the parties from contracting as they see fit, as to whether the plaintiff will undertake the responsibility of looking out for himself. It is quite possible for the parties expressly to agree in advance that the defendant is under no obligation of care for the benefit of the plaintiff, and shall not be liable for the consequences of conduct which would otherwise be negligent. In other words, the parties may agree that there shall be no obligation to take precautions and hence no liability for negligence.") (internal quotation marks omitted). Presumably, appellants are relying on their argument, which we have rejected, that they were not provided the Conditions of Carriage and that the Conditions of Carriage are not part of the contract.

[11] The U.S. District Court for the District of South Carolina denied liability in a similar case, *Wittenberg v. Eastern Air Lines, Inc.*, 126 F. Supp. 459 (D.S.C. 1954). There, the airline promised plaintiff that it would hold his connecting flight, thus inducing him to board the first flight. When plaintiff arrived at the gate, his connecting flight had departed. The court concluded that "the provisions of the . . . Passenger Rules Tariff"– similar to the Conditions of Carriage–"are a complete bar to the prosecution of plaintiff's action" for tort damages. *Id*. at 461. Like the Conditions of Carriage, the Tariff excluded the airline from all liability for missed connections and flight times.

Appellants offer little explanation of the exact nature of the alleged mistakes the court made in reaching its conclusion. Nevertheless, we will address appellants' claims of physical and economic injuries as we understand their arguments.

### *Reliance*

Appellants assert that American contractually promised "that it could transport [appellants] from Washington, DC to Key West within the time identified," and represented that, "despite the delay, [it] would provide [appellants] with the connecting flight from Miami to Key West." Appellants also allege that American falsely represented that the Key West flight had departed prior to appellants' arrival at the gate for that flight. But even assuming that such representations were made, appellants could not *justifiably* rely on such statements or the times indicated on their tickets, in light of the provision in the Conditions of Carriage stating that "times shown in timetables or elsewhere are not guaranteed and form no part of this contract," coupled with the limitation of liability and non-modification clauses, *see supra*. "[I]n determining whether the reliance was reasonable, the background and experience of the party that relied upon the representation is relevant." *Goldstein v. Miles*, 159 Md. App. 403, 437 (2004). In this case, Mr. Lavine is an experienced attorney licensed to practice law in Maryland, and thus his reliance was not reasonable.

### *Proximate Cause*

As a general rule, "one may recover only those damages that are affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect

13

of the injury." *Empire Realty Co. v. Fleisher*, 269 Md. 278, 284 (1973) (internal citations omitted). In the case of a misrepresentation, "the plaintiff must show not only that he would not have performed the act from which the injury resulted but for the misrepresentation, but also that the fact misrepresented was the proximate cause of the injury." *Lustine Chevrolet v. Cadeaux*, 19 Md. App. 30, 35 (1973). To establish the causal link,

> the plaintiff must show that there is a reasonable probability or reasonable certainty that the act complained of caused the injury suffered. Mere possibility is not enough. Reasonable probability can be shown by either direct evidence or inferences drawn from surrounding circumstances.

*Id*. at 36.

In the complaint, appellants argue both physical injury and economic harm resulting from appellee's alleged misrepresentations regarding their ability to board flight 4941: (1) breathing difficulties resulting from inhaling construction debris while running through Miami International Airport, and (2) resulting economic damages associated with that physical injury in addition to the cost for the hotel room in Miami and the loss of use of the hotel room in Key West.[12]

As to the physical injury and the related damage claim, we are not persuaded that appellants demonstrated a sufficient causal connection. We agree with appellee that appellants' "claim for personal injuries related to the inhalation of construction fragments is too attenuated to be actionable. . . . It is not foreseeable that [appellants] would inhale

---

[12] In their complaint, appellants claimed damages of "physical injury, lost time from work, lost expenses and mental anguish." In their brief and at oral argument, appellants focused on the breathing problems occasioned by the construction debris and the Miami and Key West hotel rooms. Our analysis relates to any of the claimed damages.

14

construction debris and sustain personal injury as a result of an airline scheduling delay."[13]

As to the cost of the Miami hotel room, it may have been foreseeable that appellants, relying on statements of appellee's agents that allegedly induced appellants to board flight 1219, would need lodging in Miami on the night of December 21 if they missed the connecting flight. But as we have previously explained, appellants did not generate a genuine dispute of fact that appellee did not secure lodging for appellants in Miami. And while it may have been foreseeable that appellants would lose the opportunity to use their Key West hotel room, this claim is expressly precluded by the Conditions of Carriage.

---

[13] In their complaint, appellants also relate their physical injuries to the alleged statement by appellee's agent in Miami that they had fifteen minutes to reach the gate for the connecting flight. At oral argument, appellants claimed that they were "*directed to run* through the airport to the connecting flight, directed through" the construction debris. (Emphasis added). "These are [appellee's] representatives *telling you . . . to go and run*." (Emphasis added). Appellants, however, do not include these alleged statements as a misrepresentation in any of the counts in the complaint. Nor did appellants allege in their complaint a pure negligence claim based on these alleged statements by appellee's agent. *See Tobin v. AMR Corporation*, 637 F. Supp. 2d 406, 410 (N.D. Tex 2009) (Mrs. Tobin brought a *negligence* claim where an agent of American Eagle Airlines told the Tobins "that the connecting flight would be leaving in ten or fifteen minutes, and that '*in the time that you are standing here talking to me about this, you could be there.*'" After running to the gate while carrying luggage and pushing Mrs. Tobin in a wheelchair, Mr. Tobin suffered a heart attack on the plane. The trial court rejected American Eagle's motion for summary judgment.) (emphasis added). "Although the tort of negligent misrepresentation is generally rooted in negligence, in that, like negligence, it requires a duty, breach of duty, injury and causation, the major difference is that negligent misrepresentation focuses on affirmative statements made by the defendant that were intended to, and indeed, had the effect of, inducing the plaintiff to carry out some action in reliance on the false statements." *Lloyd v. GMC*, 397 Md. 108, 137 n.10 (2007); *see also Cross Keys, Inc. v. United States Gypsum Co.*, 315 Md. 741 (1989). Finally, even if appellants had brought a pure negligence claim, the injuries complained of were not the result of simply running, but rather from running through the construction debris, which, in our view, would be an intervening cause.

15

Nor are we persuaded that the alleged false statement that the airplane had already departed Miami International Airport was the proximate cause of the economic harm. It was the denial of boarding that caused the claimed harm–not when the airplane actually departed after boarding was denied.

### *Preemption*

"The rules governing preemption are well settled. Where Congress has expressly stated its intent to preempt state law, federal law prevails." *Wells v. Chevy Chase Bank, F.S.B.*, 377 Md. 197, 209 (2003). The ADA states that,

> [e]xcept as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1). Congress enacted § 41713(b)(1) "to ensure that the States would not undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992).

The United States Supreme Court first addressed the scope of federal preemption under the ADA in *Morales*. Looking to the phrase "relating to,"[14] the Court concluded that

---

[14] "Before recodification in 1994, the preemption clause read, in relevant part: 'No State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law *relating to* rates, routes, or *services* of any air carrier . . . .'" *Smith v. Comair, Inc.*, 134 F.3d 254, 257 (4th Cir. 1998) (quoting 49 U.S.C. App. § 1305(a)(1) (Supp. 1994)) (first emphasis from *Smith*, second emphasis ours). The two relevant differences between the old and current versions of the ADA are the changes from "relating to" to "related to," and "services" to "service." "Under

(continued…)

the statute "express[ed] a broad pre-emptive purpose." *Id*. at 383. Claims *"having a connection with, or reference to*, airline 'rates, routes or services' are [thus] pre-empted under" the statute, *id*. at 384 (emphasis added), even if the effect is only indirect. *Id*. at 386. But state actions that affect airline prices, routes, or service "in too tenuous, remote, or peripheral a manner" are not preempted. *Id*. at 390.

In *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), plaintiffs sued a defendant airline in an Illinois court for breach of contract and alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act based on allegations that defendant had modified retroactively its frequent flyer program, adversely affecting the value of points already earned by imposing limitations on seats available and restrictions on dates on which the points could be used. In permitting the contract action to proceed, the Court carved out an exception to ADA preemption for contract claims and other "self-imposed undertakings," even when the claim relates to prices, routes, or service, *id*. at 228, if the claims can be decided within the four corners of a contract "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id*. at 233. In dicta, the Supreme Court stated, "[p]laintiffs' claims relate . . . to 'services,' *i.e., access to flights. . . .*" *Id*. at 226 (emphasis added).

---

established canons of statutory construction, it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed." *Finley v. United States*, 490 U.S. 545, 554 (1989) (citation and internal quotation marks omitted). We have not found or been directed to any change in effect intended by the revised language.

While the Supreme Court has not directly addressed the word "service" in the context of the ADA, *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265 (9th Cir. 1998) (en banc), it has done so in a related setting. In *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008), the Court, heavily relying upon its ADA jurisprudence, settled on a broad interpretation of "service" as used in the Motor Carrier Act (the "MCA"). Modeled after the ADA, the MCA forbids States to "enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . ." 49 U.S.C. § 14501. *Rowe* involved a Maine law requiring tobacco retailers to only use a delivery service that provided recipient verification service. The Court found this law to be preempted by the MCA. The Court reasoned that the law, albeit aimed at retailers, "related to" motor carrier services; and though less than a *direct* connection to a carrier's service, "the effect of the regulation is that carriers will have to offer tobacco delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate." *Rowe*, 522 U.S. at 372.

Against the jurisprudential backdrop of *Comair*, *Wolens*, and *Rowe*, federal courts of appeal have divided on the scope of the word "service." Some, such as the United States Court of Appeals for the Fourth Circuit, have adopted an expansive and pro-preemption reading of "service." Others, like the United States Court of Appeals for the Ninth Circuit,[15]

---

[15] According to the Ninth Circuit,

[a]irlines' "rates" and "routes" generally refer to the point-to-point transport of passengers. "Rates" indicates price; "routes" refers to courses of travel. It therefore follows that "service," when juxtaposed to "rates" and "routes," refers to such things as the frequency and scheduling of

(continued…)

have read the word more narrowly, and are more receptive to state claims. A majority of the federal circuit courts that have construed "service" have interpreted the word broadly. *See Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (provision of food, water, electricity, and restrooms to passengers during lengthy ground delays relates to service); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc) ("Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." But tort actions for personal physical injuries or property damage caused by the operation and maintenance of aircraft are not preempted.); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996) (approving the *Hodges* elements, but excluding slander and defamation claims); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir. 2003) (approving the *Hodges* elements, but excluding Florida's prohibition against retaliatory discharges); *Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998) (boarding procedures relate to service); *Chukwu v. Bd. of Dirs. British Airways*, 889 F. Supp. 12, 13 (D. Mass. 1995) *aff'd mem. sub nom. Azubuko*

---

transportation, and to the selection of markets to or from which transportation is provided (as in, "This airline provides service from Tucson to New York twice a day.") To interpret "service" more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything an airline does. It seems clear to us that that is not what Congress intended.

*Charas*, 160 F.3d at 1265-66.

*v. Bd. of Dirs. British Airways*, 101 F.3d 106 (1st Cir. 1996) (ticketing, boarding, and in-flight service relate to service).

In *Smith*, the court explained, "[t]o determine whether a claim has a connection with, or reference to an airline's prices, routes, or services, we must look at the facts underlying the specific claim," and in doing so, concluded that "[u]*ndoubtedly, boarding procedures are a service rendered by an airline.*" 134 F.3d at 259 (emphasis added). However, "[s]uits stemming from outrageous conduct on the part of an airline toward a passenger will not be preempted under the ADA if the conduct too tenuously relates or is unnecessary to an airline's services." *Id.*[16]

"The decisions of the Supreme Court of the United States construing the federal constitution and acts of Congress pursuant thereto are conclusive." *French v. Hines*, 182 Md. App. 201, 262 n.21 (2008) (quoting *Gayety Books, Inc. v. City of Baltimore*, 279 Md. 206, 212-13 (1977)). Even "[d]icta of the United States Supreme Court should be very persuasive." *Rollins v. State*, 392 Md. 455, 475 (2006) (quoting *Fouts v. Maryland Cas. Co.*, 30 F.2d 357, 359 (4th Cir. 1929)). Decisions of federal courts of appeal, however, do not constitute binding authority. *Pope v. State*, 284 Md. 309, 320 (1979). This applies as equally to the Fourth Circuit, which includes Maryland, as it does to the Ninth Circuit. But

---

[16] Appellants posit that, under appellee's understanding of the Fourth Circuit position, "American Airlines employees could, while someone[ is] standing in line, take a baseball bat and hit him over the head and be told, 'that's part of Federally regulated practice of boarding procedures.'" Such "outrageous conduct" would not, in our view, be preempted.

20

"[t]o be sure, we may consider persuasive the opinions of federal courts . . . ." *French*, 182 Md. App. at 262 n.21.

Consideration of Supreme Court precedent, coupled with the views of the lower federal courts, persuades us that the claims at issue in this case are not "too tenuously" related to appellee's "service," and therefore are preempted by the ADA. We explain.

We believe that the Supreme Court's interpretation of "service" in the MCA is indicative of its views of the word as used in the ADA. *C.f. Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) ("When . . . judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well."). *Rowe* "necessarily defined 'service' to extend beyond prices, schedules, origins, and destinations." *Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008). This holding, plus the Court's previous correlation of "service" to "access to flights" and its observation that the statute "express[es] a broad pre-emptive purpose," persuade us that boarding procedures are a "service," and, it follows that allowing state tort claims that are closely related to such a service to proceed "would result in significant de facto regulation of the airlines' boarding practices." *Hodges v. Delta Airlines*, 44 F.3d 334, 339 (5th Cir. 1995) (citing *O'Carroll v. American Airlines*, 863 F.2d 11 (5th Cir. 1989)) (refusing to entertain a state law claim based on a wrongful eviction from a flight).

Here, appellants' economic claims have their genesis in a delayed flight and ultimately relate to established boarding procedures as set out in the Conditions of

Carriage. In their brief, appellants focus on the alleged misrepresentation that "despite the delay, [appellee] would arrange for [appellants] to *board* their connecting flight from Miami to Key West" and a second agent's statement that they had fifteen minutes to reach the gate for the Key West flight. (Emphasis added). But, having reached the gate within that timeframe, appellants were denied boarding because they arrived at the gate only five minutes before the scheduled departure. That denial was consistent with appellee's boarding procedures and a provision of the Conditions of Carriage stating that a passenger "must be present at the departure gate and ready to board at least 15 minutes prior to scheduled departure time to retain your reservation and a seat."

Preemption, as it relates to the physical injury claim, invites further analysis because the injuries were not incurred while actually boarding the connecting flight and were not the direct result of appellee's activities within the terminal. In *Tobin v. AMR Corp.*, 637 F. Supp. 2d 406 (N.D. Tex 2009), cited by both appellants and appellees in their briefs and at oral argument and mentioned earlier in the opinion, the airline unsuccessfully contended that:

> assistance to the connecting gates is a "service" within the meaning of the Deregulation Act. Defendants characterize transfer assistance as part of the "bargained-for or anticipated labor" arising out of the contractual relationship between passengers and the airline. The Court will not now so hold. When Mr. Tobin spoke to the American Eagle gate agents, he and his wife had already deplaned, and were moving from one flight to the next. They were not traveling on or boarding an airplane, nor enjoying any of the airlines' services. Thus, the Court will not now hold that such claims are preempted by the Deregulation Act.

*Id.* at 421.

22

Although "moving from one flight to the next" may not be strictly a part of the boarding procedures,[17] the need to do so hurriedly usually relates, as it did here, to the timeliness of the earlier flight. In the absence of some "outrageous conduct" by the airline, we are not certain that rushing to catch a connecting flight is "too tenuously" related to an airline's service to be denied preemption, but we need not decide that issue in this case. Even if it were, the resulting claims are barred by the Conditions of Carriage and the intervening construction within the airport.

## CONCLUSION

There being no genuine disputes of material fact, appellee was entitled to summary judgment as a matter of law.

> **JUDGMENTS OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**

---

[17] At oral argument, the Court asked appellee: if an airline agent "told me to run to the plane . . . [is] that running to the plane . . . part of the boarding procedure?" Appellee's counsel responded, "no it's not."